Davidson *v*. Dallas.

## DAVIDSON *v*. DALLAS *et als*.

*Davidson* v. *Dallas*, (8 Cal. —) commented on, and doubted, and the opinion intimated that the bonds in question were independent securities for the same object of holding the Sheriff harmless in respect to the same act of retaining the vessel, and that they amount to an undertaking on his part to detain and hold the vessel, at the request of each of the creditors, Gilsen and Dallas, and to a separate covenant by each of these obligors, in consideration of this agreement, to see him harmless from any consequences arising from such detention. The question, therefore, is left open for review.

A decision of the Supreme Court in a given case, whether erroneous or not, becomes the law of the case, and cannot be reviewed when the case comes up on a second appeal, the facts being the same.

In theory, issue is joined, in the Supreme Court, upon the assignment of errors made upon the record. The case may be regarded as a new and distinct action. Upon the issue thus made the judgment of the Court must rest, and

that judgment affirms the law on the matter presented for adjudication, and fixes the rights of the parties under the law.

And where the judgment below is reversed and the cause remanded for new trial, it must be retried in pursuance of the principles of law declared in the opinion of the Appellate Court. The directions of the opinion become a portion of the judgment.

*Stearns* v. *Aguirre*, (7 Cal. 443) does not conflict with this view. That case held that a general order of "reversal," in a common law case, did not preclude another trial; but it did not hold that such new trial was to be unaffected by the opinion of the Supreme Court. The general words of the Chief Justice in that case, that the parties had the same rights after the reversal as before, must be thus restricted.

The Supreme Court loses jurisdiction over a case, after the *remittitur* is issued, and the Term at which the judgment was rendered has passed. And this, whether the judgment be final in the sense of a definitive determination of the matters involved, or interlocutory.

APPEAL from the Twelfth District.

Case stated in the opinion of the Court. Defendants had judgment below, plaintiffs appeal.

*C. Temple Emmet,* for Appellant.

I. The breach of the condition of the Dallas bond occurred, the moment Davidson obtained judgment against the Sheriff, Gorham; and the Sheriff's right of recovery does not in any manner depend upon the question whether Dallas was benefited or not; or whether his or Gilsen's writ was first delivered to the Sheriff; or whether the vessel was sold under Gilsen's or Dallas' writ; or whether the proceeds of the sale were credited to the one or the other.

The liability of the defendants depends simply on the terms of their contract with the Sheriff; and by that contract, defendants, after reciting that the vessel was seized under the writ of Dallas, that Davidson claims the property, and that Dallas requires the Sheriff to detain the property, notwithstanding Davidson's claim, covenant that they will protect the Sheriff and hold him harmless from any liability he may incur by reason of detaining the property from Davidson.

And the record of *Davidson* v. *Gorham,* shows that the Sheriff did detain the property from Davidson, and that he has been made liable therefor, in the sum of eighty-five thousand dollars, etc. These indemnity bonds spring from the unascertained and uncertain question of ownership of the property seized, and are only designed to meet the

Davidson *v.* Dallas.

event of a mistake in such ownership; and the Sheriff, in accepting an indemnity, only binds himself to treat the property as belonging to the attachment debtor. This he has done. (*Watmough* v. *Francis*, 7 Barr. 206.)

II. Nor can the plaintiff's recovery be defeated because the Sheriff took another and distinct bond of indemnity from Gilsen. The bonds are totally distinct. Nothing is said in Dallas' bond about that of Gilsen, or about Gilsen's proceedings. There is no condition, express or implied, that the defendants' obligation depends upon or is subordinate to any obligation of other parties. Nor does the law make or contemplate any such condition.

Where different parties require a person to do an act, and they each give him a separate covenant to protect him, he may sue upon any one of the separate covenants he chooses. And it is no defense that he holds other covenants.

His action must follow the instrument upon which it is founded, and as his contract contains no such condition, none such can bar his recovery.

Nor is there any liability for contribution between the obligors in the two bonds. There is no privity between the sureties. They had no interest in the seizure, and their liability depending entirely on their contract, they could have no privity with any one not a party to the contract. ,

III. The former decision of this Court is not the law of the case.

No such rule obtains in this State. The opinion is no part of the judgment, and when a judgment of the lower Court is reversed and a new trial ordered, the entire effect of such reversal is to place the parties back to the position which they occupied before the reversed judgment was rendered, leaving them free to come up to this Court upon the second judgment below, and receive the right and justice of their cause without trammel or impediment from any opinion or reasons (unless they be intrinsically sound) expressed on the former reversal. (*Stearns* v. *Aguirre*, 7 Cal. 443; *Phelan* v. *The Supervisors, etc.*, 9 Id. 15.)

And could there be any doubt as to the general correctness of this proposition, none can exist as to its applicability to the case at bar. The reasons given on the former judgment of reversal are not the reasons of even a majority of the Court. Two of the Judges concurred in reversing the judgment and ordering a new trial, but one of them con-

fined his concurrence expressly to the judgment alone.    The opinion and reasons are therefore the individual opinion and reasons of Mr. Justice Burnett, and not in any sense the act of the Court.

`Saunders & Hepburn`, for Respondents.

*Henry Wilkins*, of Counsel.

The former decision of this Court is the law of the case.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

This is an appeal from a judgment of the Twelfth District Court. The case was here before, and will be found reported in 8 Cal. 227. The judgment was there in favor of the defendants, who were the appellants in this Court.    The opinion was delivered by Mr. Justice Burnett, and the judgment of reversal concurred in by the late Chief Justice Murray.    A petition for a rehearing was filed, whereupon the questions were again considered by Mr. Justice Burnett, who adhered to the views first taken by him ; and in the last opinion, Mr. Justice Terry, then Chief Justice, concurred.

The facts in the record then, so far as they apply to the matter now before us, were these: B. Davidson, the plaintiff below, as the assignee of W. R. Gorham, late Sheriff of San Francisco, sued A. G. Dallas, Bernard Peyton and E. B. Falkner on a bond for $100,000, given them under the following circumstances: One Gilsen sued out an attachment against one Meiggs for $35,000, which writ was levied on the steam tug "Underwriter," on the eighth day of December, 1854, at thirty minutes past twelve o'clock, A. M.    One McPherson, as agent of defendant Dallas, also sued out attachment against Meiggs for $12,542, which was also levied on the same vessel on the same day with Gilsen's, but a few hours after the levy of Gilsen's.    Davidson claimed the vessel, whereupon, on the demand of the Sheriff, separate bonds of indemnity were given by Gilsen and Dallas—both with sureties, and each bond in the penalty of $100,000.    The condition of each bond was to indemnify Gorham for retaining the vessel.    On the twelfth of December, 1854, Davidson sued Gorham for the seizure of the vessel, and on the sixteenth of January, 1855, recovered judgment against him for the sum of $85,000.    McPherson and Gilsen both had notice of the trial of Davidson against Gorham, and both assisted to defend it.    The

Sheriff has not paid the judgment, but assigned to Davidson the bond of indemnity executed by McPherson as the agent of Dallas. Before the case of *Davidson* v. *Gorham* was finally disposed of, and while the case was pending here on appeal, McPherson and Gilsen entered into an agreement, by which it was stipulated that in case of a final decision in their favor, the amount for which the vessel sold should be divided *pro rata*, if not sufficient to pay both debts, etc.

Gilsen, pending the appeal here, obtained judgment against Meiggs, upon which execution was issued September 29th, 1855, for $38,000 and more—under which judgment the vessel was sold for $35,000, and the money paid to Gilsen.

On the second of January, 1856, Gorham, for the consideration of $2,500, paid by Gilsen, released the sureties of Gilsen from all liability upon the indemnity bond given by Gilsen.

We have stated the facts, so far as they appeared or were considered by the Court when the case was here at the October Term, 1857. We have omitted some facts touching the agency of McPherson for Dallas, which are not important now; and we shall have occasion to see if there be any and what difference between the facts at present before us on this appeal, and those upon which the former decision rested.

The case in 8 Cal. is fully and carefully reported. It was argued by able counsel, orally and in elaborate briefs, and seems to have engaged the anxious consideration of the Court—all the Judges participating, in one stage or another of it, in the decision. We do not agree with the learned counsel for the appellant that the principles which are laid down in the opinion of Judge Burnett were not those of the Court. It is true that Chief Justice Murray only agreed to the reversal, and that some inference may be indulged that, limiting his concurrence in this way, he was not entirely satisfied as to everything in the opinion; but it is scarcely to be supposed that he did not agree with his associate as to the principal point in the opinion, as the case seems to have rested upon that point; and as, if Murray, C. J., had differed on the only other question upon which a reversal was urged, viz: the want of authority of McPherson, as the agent of Dallas, to bind him, he would have indicated this, that the case might be intelligently tried below. But apart from this, upon the petition for rehearing, Mr. Justice Burnett reiterates and reaffirms his former conclusions, and this opinion of reconsideration was delivered before the issuance of the remittitur, and is to be taken as a part of the first opinion, and was as

much the guide of the District Court as the first.    In this last opinion, as observed before, Terry, C. J. concurred.

This brings us to consider what was decided in that opinion, and the judgment following it.    From the opinion itself, as well as from the reported points, we find that the appellants sought a reversal on three grounds.

1. That in the Meiggs loan, McPherson acted without authority from Dallas, who never ratified, and that, therefore, the debt from Meiggs was never in fact owing to Dallas; and the suit therefore not authorized by the power

2. That the power of attorney does not authorize the execution of the bond of indemnity for Dallas, and that his sureties executing the bond as his bond, and the condition failing, are not bound.

3. That there is no proof of damage within the recitals and condition of the bond, and therefore no breach nor consequent damage nor liability proved.

The two first propositions were elaborately considered by the Judge delivering the opinion, and the conclusion was reached that they were not sound.    The third remained, and this is the chief matter of dispute here, as it was on the former argument.

The opinion construes the liability of Dallas to be a qualified liability to follow his right in the attached property, and to be secondary and subordinate to that of Gilsen; that the Sheriff held and detained the property of Davidson—first, for Gilsen, and to answer his claim; and, secondly, for Dallas, and to answer *his* demands; and it deduces, as a conclusion from this view, that Dallas and his bondsmen were not liable primarily on the bond for the damages caused by the detention of the property, when the whole proceeds of the property were absorbed by the debt of Gilsen.    This view of the law was also sustained and enforced on rehearing, in the opinion in which Chief Justice Terry concurred.    It is insisted by the appellant, that the reasoning and conclusion of the Court in this opinion cannot be maintained. And we have been forcibly struck by the able and cogent argument of the counsel to sustain this view.    Indeed, we might go further, and say that we are by no means satisfied that this decision was not erroneous in principle.    We are inclined strongly to think that these bonds were independent securities for the same object of holding Gorham harmless in respect to the same act of retaining the vessel, and that they amount to an undertaking on Gorham's part to detain and hold the vessel at

Davidson *v.* Dallas.

the request of each of these creditors—Dallas and Gilsen—and to a separate covenant by each of them in consideration of this agreement, to see him harmless from any consequences arising from such detention.    This view is not only supported by the language of the Dallas bond, which takes no notice of the other bond or suit, and which unconditionally stipulates to pay these damages arising from detention of the vessel; but it is aided by the argument, that Gorham would have been bound, in order to protect himself from liability to Dallas, to hold on to the vessel, even if Gilsen had dismissed his suit.    It is hard to see, then, how Dallas' liability was affected by the fact that Gilsen had stipulated for a similar or the same duty or acts as himself, there being no sort of privity, either in the contract or consideration, between the two.    Nor does it appear that the bond of Gilsen was anterior in its execution, or that the demand for it was prior to that of Dallas.    Whether any contribution existed between these two creditors or their bondsmen, is a different question, and one, probably, of some difficulty; but this does not affect the question of liability of each of the sets of obligors.    A man may take several independent securities in respect to the same matter, but this does not impair the right to enforce any one until he obtains satisfaction.    We are inclined to think that Gorham made himself a bailee of this property for each of these creditors, agreeing to detain for each, upon certain terms and conditions named, viz., a guarantee by each to protect him against all the consequences of a detention of the property from the true owner; and we do not perceive that the mere fact that Dallas would only have been entitled to it, or the proceeds of it, in a given contingency, or had a less interest in it than another, or, probably, that he had, in fact, no interest at all, would alter the liability; the liability not arising from the interest he had in the property, but from the express contract with Gorham, for Gorham to retain it in his possession, and refuse to give it to the claimant.    Nor is it easily perceived how a Court of law could apportion such a contract, or determine whether Gorham acted, or to what extent he acted, with reference to this or to another indemnity, it appearing that he had done the very acts agreed by him, and which, whether this interest of Dallas was a present or future, or a certain or a contingent interest, it was necessary he should do, in order to enable Dallas to get the benefit of the obligation of Gorham to retain the property.    But if we concede that Gorham could not, without a breach of his obligation, release the property to Davidson, it would seem to

follow that he was entitled to hold Dallas to the correlative obligation of protecting him, as the stipulation provides, from all damages arising from such refusal to release it. The obligation of Gorham was independent of the acts or claim of Gilsen, and it would seem that the obligation of Dallas to Gorham should be held alike independent of such acts or claim. (See *Watmough* v. *Francis*, 7 Barr, 210.) We might say more on this subject, but it is unnecessary; for our only object now is to state our dissatisfaction with the former decisión in this case, in order to obviate the idea of its implied approval. We shall consider the question open to further consideration, whenever it is properly presented for review.

2. But the respondents' counsel meets this view by opposing to it the decision and judgment heretofore made, and claims that, whether erroneous or not, that decision is the law by which we are bound. And we are compelled to yield our assent to the proposition. The question of the binding force upon this Court of its own judgments rendered at a previous Term in the same case, is not an open one. It arose early and was first announced in the case of *Dewey and Smith* v. *Gray et al.* (2 Cal. 376). In that case the Court said: "When this case was here before, the Court decided that if a landlord entered upon his tenant's premises without his consent, before the expiration of the lease, and relet the premises to another, such entry and reletting discharged the tenant from his covenant, except as to such part of the rent as had accrued at the time of the reëntry, which the landlord was entitled to recover."

The latter portion of that decision is in abrogation of one of the plainest principles of law, and if this case was a new one, I would not hesitate to overrule it. But legal rules deprive us of the power to do so. The decision having been made in this case, it has become the law of the case, and it is not now the subject of revision.

The question was very fully argued and considered by the Supreme Court of the United States, in the case of *The Washington Bridge Company* v. *Stewart et al.* (3 Howard, 413); and although in that case the question raised on the record was the important one of jurisdiction, it was, notwithstanding, held that the previous decision of the Court in the same case, was conclusive of the rights of the parties, and not "revisable." This decision was followed by the cases of *Clary* v. *Hodgland*, 5 Cal. 476, and 6 Cal. 685, and also *Gunter* v. *Laffan*, 7 Cal. 592. See also, the following cases: *Washington B. Co.* v. *Stewart*,

3 How. 413, 424; *Hennely* v. *Rose*, 5 Cranch, 313; *Skiller's Executors* v. *May's Executors*, 6 Cranch, 267; *Santa Maria*, 10 Wheat. 442; *Ex parte Sibbald*, 12 Pet. 488, 491; *Hosack's Express*, etc. 25 Wend. 313, 364; *Stiver* v. *Stiver*, 3 Ohio, 18, 19; *Booth* v. *Commonwealth*, 7 Metcalf, 286; *Russell* v. *Laroque & Hatch*, 13 Ala. 151.

Upon an appeal to this Court, the record of the case below is brought here, in order that the judgment of this Court may be obtained upon the matters assigned as errors. The case thus made, may be regarded as a new and distinct action. In theory, issue is joined in this Court upon the assignment of error made upon the record; and upon this issue the judgment of the Court must rest. After the issuance of the *remittitur*, it loses its jurisdiction over the case. The questions have passed, with the case, from its control. The judgment may be upon the whole matter, or upon a part; upon all the questions, or upon a single question. It may be upon a question of fact or a question of law. It may be final, in the sense of a definitive determination of the matter, or it may be interlocutory; but it is final so far as the jurisdiction over it is concerned, or any power of control after the issuance of the mandate and the lapse of the term at which judgment is rendered. The power of the Court is exhausted. Mr. Justice Baldwin, in *ex parte* Sibbald, (12 Peters, 488) says: "Before we proceed to consider the matter presented by these petitions, we think it proper to state our settled opinion of the course which is prescribed by the law for this Court to take, after its final action upon a case brought within its appellate jurisdiction, as well as that which the Court whose final decree or judgment has been thus verified, ought to take. Appellate power is exercised over the proceedings of inferior Courts, not on those of the Appellate Court. The Supreme Court has no power to review its decisions, whether in a case at law or equity. A final decree in chancery is as conclusive as a judgment at law. (1 Wheat. 355; 6 Id. 113, 116.) Both are conclusive of the rights of the parties thereby adjudicated."

The decision of this Court, upon the assignment of errors, affirms the law on the matter thus presented for adjudication, and fixes the rights of the parties under the law. It affirms or reverses or modifies the judgment below. In the case of affirmance, there is no question of the finality of the judgment. Why in the case of reversal? It is true the case is remanded—but how? to be retried in pursuance of the principles of law declared in the opinion. The directions of the

opinion become a portion of the judgment. The opinion in this case remands the case for further proceedings, and those proceedings are to be in pursuance of the principles of the opinion. This is, in effect, if not directly, a mandate to the Court below to follow the directions of the opinion of this Court, on new trial; to administer the law as laid down in the opinion. The very matter here, then, in this case, in 8 Cal., was the validity of the third assignment of errors ; and this question was expressly decided in favor of the then appellants, the present respondents. That judgment is, therefore, conclusive. We could not review it on motion for rehearing. It stands as the judgment of the highest Court of record of the State; and it is not in our power now to retry it on appeal, for, as Mr. Justice Baldwin says, we have no appellate power over our own judgment.

The case of *Stearns* v. *Aguirre* (7 Cal.) is not opposed to this view. That case only considered the effect of a general order of reversal in a common law case. It was held that this did not preclude another trial; but it was not held that that trial was to be unaffected by the opinion of this Court. The general words used by Murray, C. J., that the parties had the same rights after the reversal as before, did not mean more than this : that they had the same right to try the case—not the right to try it in disregard of the opinion of the Appellate Court.

This view of the case is conclusive of this appeal. The same facts are brought before the Court now as when the case was heard and decided here. The agreement was before the Court between Dallas and Gilsen, and the effect of it was passed upon. The mere fact that the boat was sold under the process of Gilsen, and the amount credited on his judgment, and the proceeds of a subsequent sale of it divided, in proportion to their claims, between Gilsen and Dallas, can make no difference in the principle of liability.

According to the opinion, Gilsen might subject the property to sale to the extent of his claim, and, if it sold for no more, Dallas was not responsible ; for it was Gilsen's right so to subject it, and the corresponding liability for all damages resulting from the exercise of this right, devolved upon him. What he did with the proceeds—whether he kept them, or divided them with Dallas, can make no difference, so far as regards this action, on the bond of Dallas, who only bound himself to indemnify Gorham for damages beyond those incurred after the satisfaction of Gilsen's prior claim—if the principles heretofore declared be the standard. There is no proof that the sureties of Dallas assented

to this arrangement, whatever it was, with Gilsen; and their liability must be determined by their contract, and cannot be effected by subsequent matters of arrangement between the principal obligors in these bonds, with which they had no concern.   We must give effect to the leading principle of the former opinion, which was, that Gilsen had a right to subject this vessel to sale, for the payment of his debt in priority to the claim of Dallas; and that the responsibility of the bond of Gilsen was co-extensive with this right; and the liability of Dallas only accrued after the exercise of this right on the part of Gilsen, and attached only from the fact that there was some interest in the boat left after the sale under Gilsen's attachment, and which interest was subjected to or affected by Dallas' proceeding.   And it seems to follow that Dallas and his sureties cannot be held on their bond for the damages sought to be recovered in this action, although, by agreement between Dallas and Gilsen, the proceeds of this vessel, which was sold under Gilsen's claim, were divided between them.

Judgment affirmed.