Boyce *v.* California Stage Company.

---

## SAMUEL G. BOYCE *v.* THE CALIFORNIA STAGE COMPANY.

DAMAGES FOR PERSONAL INJURIES. — In an action against a stage company to recover damages for personal injuries occasioned by the overturn of the coach, it is only necessary for the plaintiff to prove the overturn and the injuries he sustained. The presumption of law is, that the overturn occurred through the negligence of the defendant, and the burden of proving that there has been no negligence is cast on the defendant. In order to rebut the presumption of negligence, the defendant must show that the overturn was the result of inevitable casualty, or of some cause which human care and foresight could not prevent.

INSTRUCTIONS TO A JURY.—Counsel may propose instructions to the Court, but the Court is not compelled to give or refuse them as asked. If in the opinion of the Judge the proposed instructions are defective in form of expression, or erroneous in law, he may modify them in either particular and give them to the jury in their modified form, or he may refuse them altogether.

VARIANCE BETWEEN ALLEGATIONS AND PROOF.—If in the progress of a trial evidence is offered by the plaintiff at variance with the allegations of the complaint, and the counsel for the defense does not object to it at the time, nor move to strike it

out upon the ground of variance, the error is waived, and the Court may instruct the jury in relation to the whole field of inquiry covered by the evidence.

ERROR.—A judgment will not be reversed because an error has intervened in the course of a trial, which does not prejudice the defendant's case.

CHANCE VERDICT.—A verdict which is arrived at by each one of the jurymen marking such sum as he thinks proper, and then adding the several sums together and dividing the total by twelve, and making the quotient the verdict, is not a chance verdict within the meaning of the second subdivision of section one hundred and ninety-three of the Practice Act.

IMPEACHMENT OF VERDICT OF A JURY.—The verdict of a jury cannot be impeached by the affidavits of the jurors, except when the verdict is arrived at by a resort to the determination of chance.

RULE OF DAMAGES.—In all cases where there is no rule of law regulating the assessment of damages, and the amount does not depend on computation, the judgment of the jury, and not the opinion of the Court, is to govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice.

APPEAL from the District Court, Tenth Judicial District, Yuba County.

The facts are stated in the opinion of the Court.

*Charles E. Filkins,* for Appellant.

The Court erred in overruling the motion of defendant for a new trial on the ground of misconduct on the part of the jury, in deciding the case by a resort to gambling. (See Statutes of 1862, p. 38; *Wilson et al.* v. *Berryman et al.,* 5 Cal. 44; *Harney* v. *Rickett,* 15 Johnson, 87; *Roberts et al.* v. *Fallis,* 1 Cowen, 238; *Donner* v. *Palmer et al.,* 23 Cal.)

*W. C. Belcher* and *C. E. De Long,* for Respondent.

Appellant claims that the Court *must* give or refuse instructions as they are asked.

It is true that the late Supreme Court seem to have held in *Conrad* v. *Lindley,* 2 Cal. 173; *Russell* v. *Amador,* 3 Cal. 400; and *Jamson* v. *Quivey,* 5 Cal. 490, that instructions must be given substantially as asked for; that the Court might modify the phraseology so as to make it more intelligible to the jury, but could not alter the sense. It is noticeable, however, that there was nothing in either of those cases to call for any such decision or rule; that in each of those cases, the instructions,

as 'asked, clearly and correctly expressed the law of the case, and as modified and given, did not.

Such a rule was at one time adopted in Alabama, but was discarded, after mature consideration, in *Long* v. *Rogers,* 19 Ala. 321, and if it can be said to exist here since the decision in *Lawrence* v. *Fulton,* 19 Cal. 690, California is the only State, so far as we have been able to discover from a pretty careful examination of the reports, in which such a rule obtains.

In *Vaughan* v. *Porter,* 16 Vt. 268, Mr. Justice Redfield says: "In regard to all written requests, the Court are never bound to regard them in their charge, unless they are couched in such terms as to be *sound* to the *full extent.* The fact that *some sound law* might be extracted from the requests, or that, in general terms, they may be sound law, with certain qualifications, is not enough. They must be wholly sound law, and without any necessary qualification, or it is not error for the Court to refuse to charge as requested. * * * These written requests are more in the nature of briefs than anything else. * * * But the truth is, these written arguments, in the way of requests, are of but little use. The Court are bound to charge upon every point material to the case upon which there is evidence, and to charge correctly and fully, whether requested or not." And in *Campbell* v. *Day,* 16 Vt. 560, the same Court say: "It is incumbent on the Court to charge the law correctly, and they may adopt their own language."

In *Lowry* v. *Beckner,* 5 B. Monroe, 42, the Court of Appeals of Kentucky say: "The Court had the unquestionable right to refuse all the instructions asked on both sides, and give such prepared by himself as might be illustrative of the principles of law involved in the controversy, in any aspect of the proof."

In *Theobald* v. *Hare,* in the same Court, (8 B. Monroe, 42,) the question of a material modification was directly before the Court, and it was decided that it is proper to modify or add to instructions asked by a party, to meet the Court's opinion of the law of the case.

In *Mask* v. *The State,* 36 Miss. 7 George, 94, the High Court of Errors and Appeals of Mississippi say: "It is not

only the right, but the duty of the presiding Judge, to modify all instructions so as to make them conformable to his own views of the law. In the exercise of this right, this Court is to presume that the high and dignified tribunals to whose discretion it is previously committed, are always actuated by motives consistent with the delicate, responsible, and important trusts confided to their care.

" While, therefore, we admit the soundness and force of the views of counsel as to the impolicy, as a general rule, of the unnecessary interference of the Court in modifying instructions for the defendant, drawn with legal accuracy and precision, both as to the terms employed and the principles declared, yet this is a matter of discretion and taste for their determination, and not ours, so long as they properly declare the law given in charge."

Was there any misconduct on the part of the jury in adopting the means they did to arrive at their verdict?

The rule is well settled that the affidavits of jurors in exculpation of themselves, and in support of their verdict, are admissable, and that they are not admissible to impeach their verdict, unless rendered so by special statute. This case is not brought within the statute—it was not " a resort to the determination of chance," but simply finding the average of the deliberate judgments of the jurors, formed and expressed under the solemnities of an oath. Until the contrary is shown, we must suppose that each juror expressed his own judgment honestly.

As was said by the Supreme Court of Virginia, in *Thompson's Case,* 8 Grattan, 637 : " What more, we would ask, have the jury done in this case than what we know is of every day occurrence in trials of Courts of equity, where, when a question of damage, or value, or compensation, arises before the Master, and when witnesses of equal credibility, or integrity and intelligence, differ in their estimates, the Master adopts as his assessment an average of the estimates of such witnesses ; and this practice is sanctioned by a Court of equity, which is a Court of conscience, as it is by law and justice. Indeed, in

some cases, it may be considered a rule of necessity as well as convenience." At least, there is no element of *chance* in such a method. It does not in any respect resemble throwing up cross or pile, as in *Mellish* v. *Arnold*, 1 Bun. 51, or hustling half pence in a hat, as in *Parr* v. *Seaver*, Barnes, 438, or drawing lots, as in *Hale* v. *Cove*, 1 Stra. 642, or flipping coppers, or throwing dice, or any other means resorted to for the determination of any matter, when men are willing to trust to blind chance rather than their own judgments. The whole subject is ably discussed in *Thompson's Case*, 8 Grattan, 637. (See also *Cowperthwaite* v. *Jones*, 2 Dall. 55; *Chandler* v. *Baker*, 2 Harrington, 387; *Heath* v. *Conway*, 1 Bibb, 398; Opinion of Chief Justice Kent in *Smith* v. *Cheatham*, 3 Caines, 61; *Dana* v. *Tucker*, 4 Johns. 488.)

*C. E. Filkins*, for Appellant, on petition for rehearing.

The common law, as well as American authorities, agreeing that such a verdict as the one rendered in this case is vicious and void, and ought not, in morals or in law, be permitted to stand. And a number of cases show that hearsay evidence (the remarks of jurors on the subject, and the testimony of the officer having a jury in charge as to what he saw the jurors do and heard them say in the jury room) has been held good enough evidence to impeach such verdicts. And thus, in the anxiety of the law to detect and punish fraud on the part of jurors, the ordinary rule of evidence has been changed.

To the general rule that the affidavit of a juror is inadmissible to impeach the verdict there is an important exception which those learned authors distinctly enunciate in their text in 3d Graham & Waterman on New Trials, 1,447, under the head of "*As to the mode adopted in their finding*," which is as follows:

"But though jurors after a verdict cannot be permitted to testify as to the reasons and motives of their determination, yet they may show the mode adopted by them in deciding as to the amount of damages." (8 Harrington, 469; 6 Mass. 272; 7 Mass. 110; 6 Pickering, 206.)

It is conceded that under the law as it existed prior to the Act of March 5, 1862, (subject to one exception, which will be hereafter explained,) the reasoning of the Court is right; and, consequently, if that statute does not materially alter it, and the case does not fall within the exception, there is no ground for complaint on the part of the respondent.

The relevant part of the statute is contained in its second section, which reads as follows:

" Misconduct of the jury, and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict, or to a finding on any question, or questions, submitted to them by the Court, by a resort to the determination of chance; such misconduct may be proved by the affidavits of any one or more of the jurors."

The learned Court will agree with me that the law as it existed for twelve years in this State, as to how misconduct on the part of jurors could be proved, was unsatisfactory, and that the legislative department, in the exercise of its undoubted authority, intended, by the law of March 5, 1862, to a greater or less extent to remedy the mischief by holding jurors to a more conscientious discharge of their duties, and removing from them the temptation to careless or dishonest action, which the rules of the common law excited by withholding the only means of detecting it.

A verdict reached by the mode adopted in this case is called a "*chance verdict*," by the Supreme Courts of the States of Massachusetts, New York, Rhode Island, Indiana, Tennessee, and Iowa, and also by the learned authors, Graham and Waterman. (*Dorr* v. *Fenno,* 12 Pickering, 521; *Dunn* v. *Hull,* 8 Blackford, 32; *Forbes* v. *Howard,* 4 R. I. 364; *Harvey* v. *Pickett,* 15 John. 87; *Mannix* v. *Meloney,* 8 Iowa, 81; 3 Graham & Waterman, 1,447.)


By the Court, SANDERSON, C. J.

This action was brought to recover damages on account of personal injuries sustained by the plaintiff by reason of the

negligent and careless upsetting of the defendant's stage coach upon which he was a passenger. The damages were laid in the complaint at fifty thousand dollars, and the jury found a verdict in favor of the plaintiff for the sum of sixteen thousand and five hundred dollars. The defendant moved for a new trial, which was denied. The appeal is from the judgment and order. .

The facts as gathered from the testimony contained in the record are substantially as follows: On the 19th of October, 1861, the respondent paid the usual fare and took passage in one of defendant's coaches, to be conveyed from Downieville, in Sierra County, to Marysville, in Yuba County. He took a seat on the outside with the driver. The coach started soon after midnight. The moon was near its full, and the night clear and bright. About two o'clock in the morning, the coach was slowly ascending Goodyear's Bar hill, and was about a mile from the summit. At that point the road curves around a very steep, rocky ravine. The roadway was constructed by digging into the bank on the upper or right hand side, and building a rock crib about eleven feet in height on the lower side and filling in with rock and earth. A log about eighteen inches in diameter was placed on the edge of the rock crib or wall, and was a little higher than the road. The road was wide enough for the convenient passage of a coach, mule team or any kind of ordinary vehicle, and the track for the lower wheel was about two feet from the edge of the wall or crib.

As the coach approached this curve, it turned out from the usual track at a small angle, and gradually approached the edge of the wall or crib instead of following around the curve, and tracked along the log nearly its whole length, when, having passed beyond the highest point of its circumference, one of the wheels slipped over the outer side of the log, and the coach, horses and passengers were precipitated down the ravine. The respondent was very severely and dangerously injured, having his lower jaw broken in three places, the upper jaw separated from its bony attachment, his right

shoulder dislocated and the right shoulder-blade broken, the skull fractured, the face, mouth and body bruised, contused and wounded. His injuries were of so serious a character as to render him entirely insensible for many days, and for a considerable time to render his recovery doubtful, and were such as to require the removal of portions of the bone of the lower jaw and to produce great and permanent disfigurement.

Up to the time of the trial of the case, more than a year and a half after the accident, he had not acquired the ordinary use of the lower jaw; the right shoulder and arm were stiff and weak and the hand partially paralyzed, being unable to perform any labor except with the left hand. The plaintiff was a laborer by occupation, and the injuries to the right shoulder and arm were of such a character as to permanently impair his capacity for laborious pursuits.

Previously, and up to the time of the accident, he was a strong, healthy man, and had the perfect use of all the members of his body.

I. The first point made by counsel for appellant is to the effect that the verdict is not sustained by the evidence when taken in connection with and confined to the allegation of carelessness and negligence contained in the complaint. And in support of this proposition it is argued that the only allegation of negligence contained in the complaint relates to the manner of driving and nothing else; that there is no evidence which explains the cause of the accident, and that there is evidence furnished by numerous experts which establishes the character of the driver for care and skill, which evidence rebuts the presumption of carelessness and negligence on his part, arising from the fact that the coach was overturned.

Admitting, for the sake of the argument, that the allegation of negligence is as narrow as counsel for appellant claims it to be, and that the cause of the accident is unexplained by the testimony, and that the general reputation of the driver for care and skill is established beyond question by the evidence, it does not follow that the overturning of the coach is to be charged to the account of unavoidable accident, or to some

cause which human care and foresight could not prevent, and therefore the defendant excused from all liability for the consequences to the plaintiff. The argument places the burden of explanation upon the shoulders of the plaintiff; but, unfortunately for the argument, the law places it upon the shoulders of the defendant. Upon the trial of an action of this character, it is only necessary for the plaintiff to prove the overturning of the coach and the injuries caused thereby. Having done this he may rest, for the presumption is that the overturning occurred through the negligence of the coachman, and the burden of proving that there has been no negligence is cast upon the defendant. How the overturning occurred is no part of the plaintiff's case. The fact that the coach did overturn is all that he need establish in order to recover for such injuries as he may have sustained. In order to rebut this presumption of negligence, the defendant must show that the overturning was the result of inevitable casualty or of some cause which human care and foresight could not prevent, for the law holds him responsible for the slightest negligence, and will not hold him blameless except upon the most satisfactory proofs. In doing this the defendant must necessarily explain how the overturning occurred, and if he fails to do this the presumption of negligence remains. Proof of the general reputation of the coachman for care and skill is not alone sufficient. Such proof, unaccompanied by any other, only serves to make the cause of the overturning still more inexplicable. And if the pleadings centre all the negligence upon the driver, such proof is still insufficient, because the law requires the defendant to show that the coachman was not only careful and skilful, but that he used that care and skill to the best of his ability on the occasion in question. Counsel, by admitting that the overturning occurred, to the personal injury of the plaintiff, and that such overturning is unexplained by the evidence, admits that a cause of action has been established, against which he has shown no defense. And we think, whether the complaint does or does not narrow the issue of negligence to the manner in which the coach was driven, is wholly imma-

terial so far as the point under consideration is concerned. The plaintiff did not undertake to prove where the negligence rested, nor did the law require him to do so; and in our judgment the defendant failed to show that it did not rest where he claims the complaint had placed it. At the point where the overturning occurred the road formed the arc of a circle. Instead of moving on the arc the team took the chord, and went so near the precipice as to allow the wheels to run off. There was no such abrupt turning out of the beaten track as would probably result from a sudden fright; on the contrary, the team seems to have moved in a straight line, or nearly so, instead of following the curve of the road. They were going up hill and moving in a slow walk. One cannot read the evidence in connection with the diagram contained in the record without coming to the conclusion that the overturning which caused nearly fatal injuries to the plaintiff, and death to some of the other passengers, was the result of careless inattention on the part of the coachman in not keeping his team in the road. This could not have happened from his inability to see the road, for it was a clear moonlight night, but it is most probable from the evidence that his inattention was the result of drowsiness, induced by the hour and the use of too much liquor.

II. The defendant, upon the trial, asked the Court, among others, to give the following instructions:

1. "That in order to find for the plaintiff, the jury must find that the stage coach was driven in a "careless, negligent or unskilful manner." The Court, upon its own motion, added after the word manner, "or that there was some fault on the part of the proprietors."

2. "If the jury believe, from the testimony, that the coach was upset by the act of the horses, as in becoming frightened, or from other cause which was not the fault of the driver, then they should find for the defendant." The Court added to this instruction, after the word "driver," the words "or proprietors."

3. "If the jury find from the testimony that the driver

(Miles Nesmith) was a person of competent skill and in every respect qualified, and suitably prepared for the business in which he was engaged, and the accident was occasioned by no fault or want of skill or care on his part, then the defendant is not liable in an action for damages in this case, and the jury should find for the defendant." To this the Court added, after the words " on his part," the words " or the proprietors."

Counsel for the appellant insists that if the foregoing instructions were correct in law, the Court was bound to give them as asked, without any modification which would alter their sense, and in support of that proposition cites *Conrad* v. *Lindley*, 2 Cal. 173 ; *Russell* v. *Amador*, 3 Cal. 400 ; and *Jamson* v. *Quivey*, 5 Cal. 490.

To those cases, so far as they may be construed to uphold the doctrine that a party may *of right* insist . that an instruction shall be given or refused, *as asked*, and that a modification thereof by the Court, whether right or wrong, is of itself error, we are unable to give our assent. It is the duty and province of the Judge to expound the law, and it is his right and privilege, in doing so, to select and make use of such language and illustration as, in his judgment, is best calculated to explain the same and render it clear to the comprehension of the jury. Upon him the law imposes the duty, and he may determine the manner of its performance. Counsel may propose such instructions as their wisdom may suggest, and submit them to the Judge ; but beyond this they have no legal right to dictate to the Judge either the form or substance. If, in the opinion of the Judge, such instructions are defective in form or expression, or erroneous in law, he may, at his election, modify them in either particular, and give them to the jury in their modified form, or he may refuse to give them altogether. If error be assigned upon such instruction, the test question is .not, *Did the Judge modify* the instruction ? On the contrary, the test is the same as in other cases, and is to be applied to the instruction in its modified form ; and if it appear that the instruction as modified correctly states the law, no error has intervened. This Court passes upon instructions, so far as

they are given, in the form in which they were received by the jury; and the fact that they were prepared by counsel, and, before given, modified by the Court, cannot be regarded as error *per se*, or as having any bearing whatever upon the question of error.    (*Long* v. *Rogers*, 19 Ala. 321.)

It is next claimed that the instructions as modified are erroneous, because they are broader than the issue of negligence tendered in the complaint and instruct the jury in effect that they need not confine their deliberations upon the question of negligence, solely to the manner in which the coach was driven, but may go beyond the driver in search of negligence, and inquire from the evidence whether the defendant was in fault in other particulars than the mere manner of driving.

In support of this position it is argued that the allegation of negligence, as contained in the complaint, does not embrace the whole field of the defendant's obligation and duty, but is narrowed, by the language used, to the carelessness and negligence of the coachman in managing and driving his team; that under this allegation the plaintiff could not recover if the overturning was the result of negligence other than careless driving, and that therefore the inquiries of the jury should have been confined by the Court to the manner in which the coachman performed his duty.

The allegation in question is expressed in the following terms: " And this plaintiff further avers that the said defendant then and there received this plaintiff as such passenger in said coach and then and there undertook, and it became its duty to use due and proper care to carry and safely convey in the said stage coach this plaintiff from Downieville to Marysville, via Goodyear's Bar and Forest City; yet the said defendant, regardless of its duties and undertakings, did not use proper care in the transportation of this plaintiff, but suffered and permitted the stage coach to be driven without due care and attention, and in so careless, negligent and unskilful a manner that," etc.

So far as what transpired at the trial can be gathered from the record, both parties and the Court, up to the time the

defendant submitted his instructions, proceeded upon the theory that there was nothing in the complaint restricting the field of inquiry.   There was no evidence, however, except in one particular, which tended in the least to fasten blame anywhere except upon the driver.   There was some slight testimony as to the character of the nigh wheel-horse and tending to show that he was inclined to shirk the performance of his share of the labor.   Being upon the side of the precipice over which the coach and team were precipitated, it is possible that the failure of this horse to perform his duty may have had a slight tendency to swing the team and coach toward the bank, and thus in a measure the unfitness of this horse may be said to have contributed to the overturning of the coach.   If the horse was unfit, and his unfitness contributed to the accident, the fault so far did not originate with the driver but with the defendant.   But to this evidence counsel for the defendant did not object at the time, nor did he afterwards move the Court to strike it out upon the ground of variance.   On the contrary he introduced evidence for the purpose of contradicting it and establishing the fitness of the horse.   When the Judge came to instruct the jury upon the application or on behalf of the plaintiff, he did so upon the theory that the whole field of the defendant's obligation and duty was open for investigation by the jury, and that they were not confined to the manner of driving ; yet to these instructions counsel took no exception.   On the contrary, the first four instructions asked by defendant, and given by the Court, proceed upon the same theory, and the modifications of the Court were only such as were necessary in order to make the defendant's instructions consistent with each other and in harmony with those which had been already given without objection.

Admitting then the narrow construction put upon the complaint by counsel for appellant to be correct, and that a slight portion of the testimony is at variance with the allegation, we think the defendant by his course at the trial waived the objection, or, in other words, failed to take advantage of it at the proper time.   But it is not necessary to rest our

decision wholly upon this ground. In our judgment the testimony shows beyond question that the whole fault lay with the coachman, and beyond his misconduct no fault attached to the defendant, and this is made so clear by the circumstances of the case in evidence that it cannot be presumed that the jury based their verdict upon any other ground of negligence than that averred in the complaint. The evidence against the horse was very slight, and the probability that his laziness contributed to the catastrophe still more so. Moreover, the testimony was successfully contradicted by the defendant, and with no show of reason can it be claimed that it had any influence upon the verdict. Such being the case, the instructions in question could not have misled the jury and put them upon a false scent. If there was any error, we are of the opinion that it did not prejudice the defendant's case.

III. It is next claimed that the verdict is a chance verdict, within the meaning of the second subdivision of section one hundred and ninety-three of the Practice Act.

Admitting, as claimed by counsel, that the amount of damages given by the jury was ascertained by each marking a sum which he thought proper, then adding the several sums and dividing by twelve, and that it had been previously agreed that the quotient, whatever it might be, should be their verdict without further consultation, still, as we have decided in *Turner* v. *The Tuolumne Water and Mining Company*, 25 Cal. 397, such verdict was not a chance verdict within the meaning of that section; and, although vicious, its character in that respect could not be established by the affidavits of the jurors who tried the case. There is no other evidence offered in support of the charge than that which comes from the jury, and it follows that the verdict stands unimpeached.

Nor can we disturb the verdict upon the ground that the damages are excessive. The rule upon this point is well stated by Mr. Justice Wilde in *Worster* v. *Proprietors of Canal Bridge*, 16 Pick. 547 : " In all cases where there is no rule of law regulating the assessment of damages, and the amount

does not depend on computation, the judgment of the jury, and not the opinion of the Court, is to govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. In the present case, the plaintiff was exposed to the imminent peril of his life, to great bodily and mental suffering, and we cannot say that the sum assessed by the jury exceeds a reasonable compensation. We do not consider whether or not we should have assessed the same amount of damages, if the case had been submitted to the Court to decide; for, in a case like the present, men of sound judgment may differ not a little in estimating the compensation which the circumstances of the injury would justify; and it is the judgment of the jury, and not that of the Court, which must govern. To justify the interposition of the Court, the damages must be manifestly exorbitant."

We see nothing in this case to warrant the belief that the verdict is the fruit of passion or prejudice. (*Aldrich* v. *Palmer*, 24 Cal. 513.)

Judgment affirmed.

By the Court, SANDERSON, C. J., on petition for rehearing.

We are asked to grant a rehearing in this case upon two grounds: First—Because we have erred in holding that at common law the verdict in this case cannot be impeached by the affidavits of the jurors; and Second—Because we have erred in holding that the verdict is not a chance verdict within the meaning of the second subdivision of the one hundred and ninety-third section of the Practice Act. In respect to these points this case was decided upon the authority of *Turner & Platt* v. *The Tuolumne Water & Mining Company*, 25 Cal. 397. We there held that, although there was some conflict of authority, the better rule was that, at common law, the affidavits of jurors could not be received for the purpose of impeaching their verdict. By so doing we did not establish the rule for

the first time in this State ; on the contrary, we merely affirmed a rule which was established as early as the first volume of California Reports and has been strictly adhered to from that time to the present. In the case of *The People* v. *Baker*, 1 Cal. 405, Mr. Justice Bennett said : "We consider it a settled rule, founded upon considerations of necessary policy, that the testimony of a juryman cannot be received to defeat his own verdict." In *Amsby* v. *Dickhouse*, 4 Cal. 103, Mr. Chief Justice Murray said : "It is well settled that a juror cannot be allowed to impeach his own verdict. The reason of this wholesome rule of law is too obvious to require any explanation." The same rule was declared in *Castro* v. *Gill*, 5 Cal. 42, by Mr. Justice Heydenfeldt. In *Wilson* v. *Berryman*, 5 Cal. 45, the rule was again reiterated by Mr. Chief Justice Murray. In *The People* v. *Wyman*, 15 Cal. 75, the verdict was sought to be impeached upon the ground that it was not a fair expression of the opinion of the jury, and the affidavit of one of the jurors was relied on for that purpose. The opinion of the Court was delivered by Mr. Justice Cope, who said : "We have repeatedly decided that this cannot be done." Thus the law of this question had become too firmly established in this State to be disturbed by the judiciary, and in order to effect a change it was found necessary in 1862 to resort to legislative action. This was done, and it was enacted that verdicts found by a "resort to the determination of chance" might be impeached by the affidavits of the jurors. But it is argued that while such is the general rule at common law, there are exceptions to it. Admitting this to be so, we answer, in the first place, that the Legislature of this State has legislated in regard to those exceptions, and that such legislation has superseded the common law. By declaring in what cases verdicts may be impeached by the affidavits of jurors, the Legislature, upon the maxim, *expressio unius, exclusio alterius est*, has declared that verdicts of a different class shall not be so impeached. And we answer in the second place, if such exceptions exist, this verdict, viewed by the light of the common law as heretofore declared in this State, does not fall within the

exception. In *Wilson* v. *Berryman*, before cited, the verdict was found by the same process as in the present case. The facts were brought to the notice of the Court by an affidavit which was sworn to by one of the jurors and also by the Sheriff. The Court expressly held that the affidavit, so far as it was the affidavit of the juror, could not be received to impeach the verdict. Thus, however it may have been elsewhere before the decision of the present case, in this State it had been judicially determined that verdicts like the present did not fall within any supposed exception, but were within the general rule of the common law.

As stated in our opinion in *Turner & Platt* v. *The Tuolumne Water and Mining Company*, the authorities elsewhere are conflicting. We do not attempt to reconcile them ; to do so would be impossible. We ground the rule upon the decisions and the legislation of this State, and we declare the law to be in this State, however it may be elsewhere, to the effect that the affidavits of jurors cannot be received in any case to impeach their verdict, except as provided in the second subdivision of the one hundred and ninety-third section of the Practice Act. And in conclusion upon this branch of the case, we may add that a line of judicial decision which struggles to multiply exceptions to a plain and simple rule, founded on considerations of the wisest policy, is not to be favored ; on the contrary, the struggle should be to bring every case within the rule, lest the rule itself become shadowy, and in time wholly disappear in a multitude of exceptions.

Upon the point as to whether the verdict in this case is a chance verdict within the meaning of the one hundred and ninety-third section of the Practice Act, as amended in eighteen hundred and sixty-two, our opinion remains unchanged. In addition to what is said upon this point in our opinion in *Turner & Platt* v. *The Tuolumne Water and Mining Company*, reference may be made to the history of the amendment of eighteen hundred and sixty-two, for the purpose of ascertaining what the evil was which the Legislature had in view, and for which they sought to provide a remedy.

On the 1st of March, 1862, a judgment was rendered, upon the verdict of a jury, in the Twelfth District Court, in the case of *Donner* v. *Palmer.* (The case is reported in 23d Cal., at page 40.) For the purpose of showing how the verdict in that case was found, we make the following extract from the opinion of the Court delivered by Mr. Justice Crocker : " The affidavit of one of the jurors, Day, after stating generally what occurred in the jury room in the way of discussion and votes, states that after a time a vote unanimous for the plaintiff was taken, but immediately thereafter Hiller and Fortune, who are charged with the misconduct, recanted and said their vote was not according to their convictions ; and soon after the affiant saw Fortune approach Hiller, and heard him propose to the latter that he would place a piece of money and the latter should guess heads or tails, and if he guessed right then their verdict should be for the plaintiff; that Hiller assented ; that Fortune then placed a piece of money and covered it so that the former could not see it ; he guessed, and they announced that he had guessed right, and they thereupon agreed to a verdict for the plaintiff, but both said it was still contrary to their convictions."

Here was a clear case of chance, without any proof of the fact except by the affidavits of the jurors. Under the law as it then stood these affidavits could not be received. The Legislature was in session at San Francisco, where the case was tried. The verdict was rendered on the first of March. On the fifth of the same month the bill amending the one hundred and ninety-third section of the Practice Act so as to allow verdicts to be impeached by the affidavits of jurors, on the ground of chance, was signed by the Governor, and became a part of the law of the land. Thus, aside from the mere wording of the law, the intent of the Legislature is made clear by a legitimate reference to the facts and circumstances which led to the passage of the Act. The Act was made broad enough to cover the case then in the mind of the Legislature and others like it. In our judgment the verdict in this case is not like it. Some cases are cited by counsel where the

Court, in commenting upon verdicts like this, loosely employ the words " chance " and " hazard," but the precise question, to wit : whether such a verdict is a chance verdict, which is here directly presented, was not involved, the question there being whether such a verdict was good or bad.   On the contrary the cases cited in our former opinion, and upon which it is based so far as authority is concerned, show that the precise question which we have considered was there considered and passed upon.   Counsel has filed an able argument in support of his petition, but we find therein no reason for a change of opinion.

Rehearing denied.