## JOHN AGNEW *v.* STEAMER CONTRA COSTA.

LIABILITY OF STEAMBOAT AS A COMMON CARRIER. — In an action against a steamboat, as a common carrier, for the loss of a horse by the explosion of the boiler, alleged by the plaintiff to have been caused by racing with a rival steamer, evidence on the part of the defense to show the good condition of the boiler is irrelevant, both on the question of liability and of damages.

SAME.—In such case, evidence on the part of the defense that the engine and boilers were strong, and that extraordinary care was used by the officers and crew of the steamer in their management while racing, is also irrelevant.

LIABILITY OF COMMON CARRIER.—The presumption of the law is against a common carrier, except it be made to appear that the injury complained of could not have happened by the intervention of human means.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

54

Plaintiff offered no evidence upon the condition of the boilers.

Plaintiff recovered judgment in the Court below for the value of the horse and interest on the amount, and defendant appealed.

The other facts are stated in the opinion of the Court.

*E. W. F. Sloan*, for Appellant.

It is a general rule of law that interest is not recoverable on unliquidated demands. (Sedgw. 377 ; *Holmes* v. *Rankin*, 17 Barb., S. C. 454.) It was said by Mr. Justice Washington, in *Gilpin* v. *Consequa*, Peters' C. C. R. 95, that " as to interest, this is a question generally in the discretion of the jury. But it is not agreeable to legal principles to allow interest on unliquidated and contested claims, sounding in damages."

An exception to that rule has been allowed in a case where there was proof of negligence and improper conduct.

It was said by the Supreme Court of New York, in *Watkinson* v. *Lawton*, 8 J. R. 217 : " The question of interest depends upon circumstances. The jury may give interest, by way of damages, in cases in which the conduct of the master was improper. But here no bad conduct is to be attributed to him, and interest is not, in every case, and of course, recoverable, because the amount of the loss is unliquidated, and sounds in damages to be assessed by the jury."

That being the rule, it would seem to follow that the Court below erred in excluding the proof offered by the defendant for the purpose of showing that the case did not fall within the exception.

*Wm. H. L. Barnes*, for Respondent.

The deposition of Coffee was incompetent and irrelevant.

In actions against a common carrier to recover damages for the non-delivery of goods intrusted to him, the measure of damages is the value of the goods at the place of destination, with interest from the day when they should have been delivered. (Sedg. on Meas. of Dam., 354, and cases cited.)

In such an action, the defendant might prove a part performance of his contract, a late delivery, or a delivery in a damaged condition, of the goods, so as to reduce the amount of damages to which the rule would otherwise subject him; because the action has only one object, viz: to place the parties in the same situation in which they would have been if the contract had been fulfilled, and so limit the recovery to the actual loss sustained. (Story on Bailments, §582, *a*, and cases cited.)

In the present case there was a total destruction of the property intrusted to the carrier, and no matter what the condition of the boiler of the defendant was, the indemnity to which the plaintiff was entitled for the loss of his property could not thereby be reduced or changed. The deposition was, therefore, incompetent as evidence in mitigation of damages.

The defendant's counsel seemed to be laboring under an impression that the responsibilities of carriers of goods for hire and of carriers of passengers for hire were identical, and that what would excuse the carrier of passengers would also exonerate the carrier of goods. The distinction between them in this respect is manifest. In the case of the passenger carrier, it might be proper to permit him to show, affirmatively, facts which would authorize the conclusion that the utmost care, diligence, and prudence were exercised; because the common carrier of passengers is not in any sense an insurer, but is answerable only for injuries to passengers against which the utmost skill and prudence could not guard. But even the exercise of the utmost skill and prudence has been held immaterial in an action against a common carrier to recover damages for injuries *to passengers*, and he has been held responsible for latent defects in machinery, or the structure of the road, whether discoverable by the exercise of the utmost skill and care on the part of the defendants or not. (*Hegeman* v. *Western R. R. Co.*, 3 Kernan, 9.)

But the liability of a common carrier of goods, by water, in a vessel propelled by steam, does not end when he has

placed on board good and sufficient engines and boilers, *capable of sustaining twice the amount of steam sufficient to explode them.* Nor when he has secured a good captain and skilful officers and agents to manage his machinery. Except as against the two classes of accidents of which we have spoken, he is the absolute insurer of the goods intrusted to him—he must deliver them or pay for them. If the offer in question could be considered an offer to prove any *fact,* or present any fact upon which the Court could pass as admissible or otherwise—which is denied—such facts would have been utterly unavailing to show that the damage in question occurred by act of God, or was one towards which no human agency had contributed. It is the most ordinary duty of a common carrier by water, in steam vessels, to supply good boilers and competent engineers. Happily for life and limb they are generally found in such vessels. But their presence cannot prove the absence of human agency in producing a disaster of this description, nor make the liability of the carrier greater, nor diminish it a hair.

By the Court, SHAFTER, J.

This action was brought to recover damages for the loss of a stallion, by means of the negligence of the defendant as a common carrier between the cities of San Francisco and Oakland.

The plaintiff introduced evidence tending to prove that on the 3d day of April, 1859, he embarked the stallion on the " Contra Costa," at San Francisco, to be carried for him to the City of Oakland. That the horse was put by the captain of the boat opposite the boiler in the place where horses were usually stationed. That the boiler of the steamer exploded on the passage, and that the horse was so far injured by the explosion that he died on the same day. That the Contra Costa was at the time racing with a rival steamer running between the same *termini;* that there was betting among the passen-

gers of the Contra Costa, which betting was encouraged by the assurances and conduct of the engineer.

The defendant offered in evidence the deposition of George W. Coffee, "for the purpose solely of showing the condition of the boilers of the steamer." The plaintiff objected to the evidence as incompetent and irrelevant, and the Court sustained the objection. The appellant claims that this ruling was erroneous.

Where the cause of the damage for which recompense is sought is unconnected, as was the case here, with the conduct or propensities of the animal undertaken to be carried, the carrier is subjected to the ordinary responsibilities connected with his vocation. (*Palmer* v. *The Grand Junction Railway Company*, 4 Mees. and Wels. 749; *Clarke* v. *The Rochester and Syracuse Railroad Company*, 14 N. Y. 574.) In the case at bar, the boilers were either sufficient or insufficient. If they were insufficient, proof of the fact could have been of no service to the defendant, of course; and if sufficient, the proper deduction from the fact would be, not that the explosion resulted from the act of God, but from some fault in the management—the very cause to which it was attributed in the theory of the plaintiff's case. The defendant was an insurer against all injury not resulting from the act of God or the public enemies, or from the conduct of the animal; and it follows that the good condition of the boilers had as little to do with the question of liability and with the question of damages also, as the condition of the rudder or the general staunchness of the ship, the misconduct charged being assumed or given.

Upon the exclusion of Coffee's deposition, the defendant offered to prove " that all skill and care and prudence were used, as far as human foresight would go, and that defendant did in fact provide and have on board a good and sufficient engine and boilers, capable of sustaining a pressure of steam twice the amount that was in the boiler at the time of the explosion, and that the master, engineer, crew and defendant so conducted themselves that the explosion occurred by inevitable accident or unknown causes, and against which precau-

tion and skill could not guard." On objection taken by the plaintiff this evidence was also excluded.

As between Court and counsel, the offer lacks the simplicity and directness called for by the occasion.

It is complicated and somewhat confused. The plaintiff's case imputed the explosion to the racing and its incidents, and proof was introduced of that misconduct by him, as we must intend, not so much for the purpose of proving the liability (*Boyce* v. *The California Stage Company*, 25 Cal. 460,) as for the purpose of enhancing the damages by interest on the value of the animal. (*Watkinson* v. *Laughton*, 8 Johns. R. 217.) If the defendant proposed to meet the case in this aspect of it, the offer should have been to disprove the particular misconduct imputed. But the offer, as made, does not necessarily impart anything more than an offer to prove that a reckless act was carefully performed.

But there is another aspect under which the question may be presented. Let it be assumed that the purpose was to prove as a proposition of defense that explosion resulted from the *vis major*, and that the proof of the strength of the boilers and of extraordinary care, on the part of officers and crew, was offered for the purpose of supplying grounds of presumption. The answer is that there is no logical connection between the strength of the boilers and extraordinary care in the management on the one hand, and *vis major* propounded on the other —as little indeed as there is between the same facts and the conclusion that the explosion was caused, or that the horse was killed by public enemies. (*Boyce* v. *California Stage Co.*) Proof that the boilers were sufficiently strong would establish merely that the horse was not killed by reason of their weakness. Proof that extraordinary care was used, would prove simply that the explosion occurred in spite of it, but it would throw no light upon the question of whether it did or did not result *acto Dei*. Between the point at which extraordinary care on the point of a bailee may be said to terminate, and the point at which " superior force " may be said to begin, there is a wide space for the interposition of other agencies, and the

law *presumes* against a carrier in every case, except it be made
to appear that the injury complained of could not have hap-
pened by the intervention of human means.   (*Forward* v. *Pit-
tard*, 1 T. R. 27.)

Other errors are assigned, but none that require particular
notice.

Judgment affirmed.


By the Court, SHAFTER, J., on petition for rehearing.

Petition for rehearing.   The rehearing is asked for on the
ground that "the attention of the Court has been by some
means diverted from the only point presented for considera-
tion in appellant's brief," to wit : the charge of the Court
"that interest can be allowed against a common carrier only
when it shall appear that there was fraud or gross miscon-
duct in carrying the property or in the transaction."   The
brief referred to "invites the attention of the Court to the
errors numbered four, five, six, and twelve," in the transcript.
Number four is as follows : "Error of the Court in refusing
to allow the defendant to read in evidence the deposition of
George W. Coffee, and refusing to allow defendant to show
the good condition of their boilers and steam engine in miti-
gation of damages."   Both of these questions are considered
in the opinion, and both, on reasons given, were decided
against the appellant, on the ground that the evidence offered
was not admissible to mitigate the damages, nor for any pur-
pose.   Number five, to which our attention was also specially
solicited, is as follows : "Error in the Court in refusing to
allow the defendant to prove by competent witnesses that all
possible skill, care and prudence was used on the part of the
agents and servants of the defendants."   That question is also
discussed in the opinion and determined against the appellant.
It will be observed that the assignment does not bring the
error alleged into relation with the point of damages ; but we,
nevertheless, after disposing of the error as related to the point
of the defendant's liability, passed upon it as it stood con-

nected with the question of damages, as is apparent on the face of the opinion.

Number six is as follows: "Error of the Court in refusing to allow defendant to prove that the boilers of defendant were capable of sustaining twice the amount of steam contained therein at the time of the alleged explosion, and that the engineer, master and crew of defendant were entirely without fault or negligence." This point, also, is not brought expressly into relations with the question of damages, but the "means" by which we were induced idly to discuss and idly to pass upon it, though forgotten by counsel, have now become apparent.

As to the charge of the Court upon the subject of allowing interest by way of damages, we did not discuss it, for two reasons, one of which was that its correctness was indisputable, and the other was that its correctness was not disputed by counsel; and, as already stated, we held, on discussion, that the general evidence which the defendant offered of "care," and "extraordinary care," and "of all possible care," and to the effect that the "boilers were in good condition," etc., was inadmissible, for the reason that the defendant did not undertake to controvert the specific fact of racing with a rival boat for the purpose of winning bets encouraged by the engineer— holding that the theory of mitigation upon which the rejected evidence was offered amounted to this—that if it could be shown that the luxury and recklessness of racing was indulged in with "good boilers," strained to bursting with "extraordinary care," that then, and in that event, the defendant should be let off from paying interest on the value of the stud, by way of damages. On these grounds we consider that, as matter of fact, no question was discussed in the opinion except such as our attention was specially called to by counsel, and that the question which counsel conceives was entirely overlooked, was, on the contrary, entirely exhausted.

Petition for rehearing denied.

Mr. Justice CURREY expressed no opinion.