## William S. Smith, *against* James Cheetham.

THIS was an action for a libel, in which a verdict for 200 dollars had been rendered in favor of the plaintiff.

*Miller*, on behalf of the defendant, moved to set it aside for irregularity in the jury, upon an affidavit of the constable who attended them, stating, that after they had retired to their room to agree on their verdict, and while discussing the matter, he heard one of them say, one cent damages was enough ; another, that six cents damages, and six cents costs were sufficient ; and that he afterwards saw, at least six of the jurors, take a pen and mark down what he believed and understood to be, the sum that they thought proper to give as damages in the cause, and from what he then saw and heard, he understood the whole sum should be divided by 12, and the quotient was to be the verdict. That two of the jurors had since owned to him that the verdict was determined by an agreement that each should put down such sum as he thought proper, that the whole should be divided by 12, and that the verdict was really thus-determined.

These facts he contended, were sufficient to warrant the application. That they did not rest solely on the confession of a juror, which might possibly, be deemed inadequate, but came through a channel perfectly regular. In *Hale* v. *Cove*, 1 *Stra.* 642, a verdict rendered by drawing of lots was set aside, though according to law. The principle of that case applied to this. It was a determination without regard to the merits. One inveterate juror might, by putting down a large sum, insure an excessive and ruinous verdict.

*Emott*, contra. The case cited, and all others on the same point, went on this principle, that it should not be left to chance to determine *on which side* a verdict should be given. Here, there was no dispute about the party, in whose favour it ought to have been rendered. The sum only was to be ascertained. Had

H

NEW-YORK, May, 1805.

W. S. Smith
v.
J. Cheetham.

It to ascertain the quantum of damages a jury agree that each shall set down such sum as he thinks fit, divide the aggregate by 12 and the quotient be the verdict, it is an irregularity for which it will be set aside. The confessions of jurymen as to their own misbehaviour may be heard in applying to set aside a verdict, and so, *ut semb.* may their affidavits. If judgment has been entered before argument brought on for want of an order to stay proceedings and the judge refused to grant one merely because he thought the case would be determined within the first four days of term, it will be no objection to awarding the new trial ordered.

NEW-YORK,
May. 1805.

W. S. Smith
v.
J Cheetham.

each juror mentioned the amount of damages he thought right, to come to an agreement, there must have been concessions. The mode complained of was as pure and innocent as if effected by word of mouth or conversation.

SPENCER, J. In this cause, the inclination of my mind was against setting aside the verdict, considering it indisputable that the *affidavits* of jurors, and of course their confessions could not be received. Were that the law, then the affidavit of *Murphy* would not establish the fact that the verdict was the result of chance. But, on examining the English authorities prior to the revolution, it appears to me, that the information of jurors as to what passed may be received. The only decision to the contrary is in 1 *Keble*, 811 ;* but it is a very unintelligible and illy reported case. The determinations in *Bunbury* 51.† and *Barnes* 441, shew, that the information of jurors may be received, and I cannot perceive any principle of law invaded by it. The affidavit of *Murphy*, in connexion with confessions of the jurors, leave no doubt, that the amount of damages was ascertained, by each person's setting down the sum he thought fit, and dividing the aggregate by twelve. If this practice be tolerated, it will prevent that discussion and examination, so necessary to the developement of truth, and so essential to justice. To affirm the present verdict, would be to sanction a practice dangerous in the highest degree. I therefore am of opinion that a new trial be had, and that the costs abide the event.

* *Prior* v.
*Powers.*
† *Bellish* v.
*Arnold.*
‡ *Philips* v.
*Fowler.*

LIVINGSTON, J. Every verdict should be the result of reflexion, and not the effect of chance or lot. Jurors being sworn to determine " according to evidence," suitors have a right to expect, that they will examine and decide upon it to the best of their ability and discernment. But if lot is to be substituted for judgment, if deliberation and reflexion are to yield to the cast of a die, parties instead of exposing themselves to a heavy and useless expense, will gamble away their right, or have recourse to more intemperate means of ascertaining them. The practice therefore cannot be too promptly, nor stronlgy discountenanced. Accordingly in England, where so much pains are taken to preserve a pure administration of justice, not only verdicts determined by lot or hazard, are always set aside, but every pecies of misbehaviour in a jury is narrowly watched, and, if not punished, the party affected by it, is never denied relief. Thus new trials have been granted, because jurors have been

allowed to go at large by the officers having the custody of them; because they had taken refreshments between the charge, and delivering their verdict; because one of them left his fellows, and then returned with a paper which influenced their decision; because a juror had received a paper from the plaintiff after leaving the bar, and especially on the ground, which most nearly resembles that on which this application is made, I mean that of determining by lot. Thus in *Mellish* v. *Arnold*,* a verdict was set aside because, whether three or five hundred pounds should be given, was determined by throwing up cross and pile. In *Hale* v. *Cove*† because two papers were put into a hat, on the one marked P coming out, a verdict was found for the plaintiff, which, although according to evidence, and the judge's opinion, was set aside. The same thing was done in *Philips* v. *Fowler*,‡ because recourse was had to casting of lots; and in *Vaise* v. *Delaval*,‖ lord *Mansfield* assented to the propriety of the rule, but would not receive an affidavit of the fact from the jurymen themselves, although in *Philips* v. *Fowler*, such a one was read. With proper submission to his lordship, it appears the best and highest evidence of which the case admits. If a man will voluntarily charge himself with a misdemeanour, why should he not be indulged? Are not criminals in England every day convicted, and even executed on their own confession? And is not our state-prison filled in the same way? But, perhaps it may be thought, that this verdict cannot be classed with those which have been the result of chance. If not, the method pursued was still more exceptionable. Where chance alone is tried, the decision will sometimes be correct, however wrong the means of arriving at it. Indeed, not many centuries back, our superstitious ancestors considered this equivocal mode of ending a controversy, as a direct and legitimate appeal to Heaven, and as a certain way of discovering the divine will. Here, the method of deciding as effectually precluded a proper exercise of judgment, as that of chance; and, what is worse, put it in the power of any one juror, from prejudice, passion, or other bad motive, to ruin a defendant. He is only to set down a sum sufficiently large, and, if his fellows adhere to their promise, a most outrageous verdict will be the consequence. Thus no one can tell, at the time of pledging himself what sum he will finally agree to. It was said on the argument, that this might be nothing more than an essay to produce an understanding. As a mere attempt at unanimity, there might be nothing

*Margin notes:*

NEW-YORK,
May, 1805.

W. S. Smith
v.
J. Cheetham.

*Bro abr. tit.*
*Verd* 17, 18, *ed.*
3 *ibid.* 18, 14,
*Her.* 7, 1.
1 *Sid.* 235.

* *Burb.* 51.

† 1 *Stra.* 642.

‡ *Barnes* 441.

‖ 1 *D. & E.* 11.

NEW-YORK,
May, 1805.

E. Stevens
v.
C. I. Company.

very reprehensible in it; but it is impossible to regard what passed in any other light, than a stipulation, by each man, to set down any sum he pleased, and that the quotient arising from a division by twelve, should at all events, become his verdict. The die was not only to be cast, but the throw, whatever it might be, abided by. If evidence of this fact may not be received from a juror himself (which opinion however I do not here adopt) what stronger proofs, than those we already have, can be required of the misbehaviour complained of? The constable who kept the jury swears " That from what he heard and saw, he understood that " the sums set down by the several jurors were to be divided " by 12, and the quotient was to be the verdict." He also swears " that the verdict was determined by an *agreement*, that each " should put down such sum as he thought proper, and that " the whole should be divided by 12, and the verdict was *thus* " *determined*." Another witness informs us, that some of the jury acknowledged the whole matter to him. Stronger than all this, is the silence of the jurors themselves. Exculpatory affidavits would hardly be rejected, and yet not one is produced. We cannot suppose, any juror would be so regardless of character, and so insensible to the calls of justice, as to deny the plaintiff so small a boon. In the case cited from *Bunbury*, affidavits had been made by persons who heard the jurors talk of the matter, and great stress is laid on " their not thinking fit to clear " themselves by oath." So in *Parr* v. *Seames* and others, *Barnes*, 438, where a verdict had been determined by " hustling half " pence in a hat," the court gave the plaintiff an opportunity to procure affidavits from some of the jurors. With me, this silence is conclusive evidence, not only of the truth of the affidavits so far as they go, but of every inference against their conduct, which the circumstances disclosed will, in any degree warrant. If we ask for stronger proofs, and at the same time, adopt lord *Mansfield's* rule of shutting the mouths of the jurors, we may as well, at once, close the door on all inquiries of the kind, and leave them to act and decide as they please. The only case from which lord *Mansfield's* opinion can derive any support whatever, is that of *Prior* v. *Powers*, *Keb.* 11. There one of the jury had confessed the whole matter, but being against himself, it was not *much* regarded, and the court seem afraid, that if they granted a new trial, they would have to punish the jury, which could not be done on their own confession. Why the judges are so very tender of the

NEW-YORK,
May, 1805.

W. S. Smith
v.
J. Cheetham.

jury; or why they, as well as others may not be punished on their own confession, which is the highest evidence, we are not told. But, without refuting an argument which is founded altogether in mistake, it is sufficient to say, that this decision took place in the 16th year of *Charles* 2d; and that, since that time, information has, in various instances, been received from the jurors themselves, so that long before the revolution, it ceased to be a precedent in *England*, and of course is not now binding here. The case of *Vaise* v. *Delaval*, happened since the revolution, and therefore forms no precedent. My opinion, on the whole, is that there be a new trial with costs to abide the event, agreeably to the decision in *Hale* v. *Cove*. The losing party ought not to pay for being relieved against misconduct and irregularity in a jury, any more than against the consequence of a misdirection on a point of law.

KENT, C. J. If the jury cast lots for whom they shall find, it would, no doubt, vitiate the verdict. 3 *Black.* 376. *Hole* v. *Cove*, 1 *Stra.* 642. *Barnes*, 438. *Prior* v. *Powers*, 1 *Keb.* 811. *Foy* v. *Harder*, 3 *Keb*, 805. But the better opinion is, that the fact must not be derived from the jurors themselves, since the court cannot take notice of it, without at the same time, making the jury answer for the misdemeanor, 1 *Keb. ub: sup.* *Vaise* v. *Delaval*, 1 *D. & E.* 11. The decision however, in *Philips* v. *Fowler*, *Barnes* 441, is *contra*. In this case then, I incline to the opinion, that so much of the affidavit as relates to the confession of the two jurors ought not to be received, although I do not think, that part of it, if proper, adds any material strength to the motion. The charge here, is not that the jury casts lots, whether they should find for the plaintiff or defendant. but only that in ascertaining the amount of the damages, they took the average sum deduced from the different opinions of each other. This has no analogy to the case of casting lots, or determining by chance for whom they shall find. The liquidation of damages, must always, in a certain degree, be the result of mutual concession, since the amount of the injury is not susceptible of being ascertained with mathematical precision. If this mode of collecting the medium of their different opinions, was fraudulently abused by any of the jury, by fixing on a sum intended to be extravagantly high or low, and which was not given in good faith, it would, perhaps, justify our interference; but no such fraud appears, or is to be presumed, in the present case. I do not, therefore, think that this mode of ascertaining the average sum, was in itself exceptionable, and if,

NEW-YORK, when ascertained, it appeared to the jury, to be a reasonable sum; under all the circumstances of the case, connected with sentiments of respect and conciliation for each others opinions, I think it was not improper for them finally to adopt that sum. As we are to intend all this took place, for nothing appears to gainsay it, I think the motion ought to be denied. It may not be improper to add, in confirmation of this opinion, that it is supported by that of the court of common pleas of *Philadelphia*, in the case of *Cowperthwaite* v. *Jones*, 2 *Dall.* 55, and which was afterwards affirmed in the supreme court of that state.

THOMPSON, J. Gave no opinion not having heard the argument.

TOMPKINS, J. Had been concerned.

\*\*\* After the decision of the court was pronounced, *Wilkins*, observed, that, as no order to stay proceedings had been served, judgment had been perfected before the argument took place, and though this fact was unknown to the counsel concerned, still it was within the rule of *Shephard* ads. *case*, *Cole*. 90.

LIVINGSTON, J. I imagined when I was applied to for an order that the argument would have been had and the determination pronounced within the first four days of term, so that judgment could not have been entered, otherwise, I should have granted the order to stay proceedings ; the defendant must not be prejudiced by my omission, or misconception.