# S. S. TURNER and H. G. PLATT *v.* THE TUOLUMNE COUNTY WATER COMPANY.

How Verdict of Jury Impeached.—The affidavits of jurors cannot be received for the purpose of impeaching their verdict unless it is a chance verdict within the meaning of the second subdivision of the one hundred and ninety-third section of the Practice Act.

Chance Verdict.—The jury entered into an agreement that each should mark

Turner *et al. v.* Tuolumne County Water Company.

down upon a separate piece of paper the amount which he thought the plaintiffs were justly entitled to recover, and that the several sums thus marked should be added together, and the total amount divided by twelve, and that the quotient, whatever it might be, should be their verdict, without further consultation or discussion; *held,* that this was not a chance verdict, within the meaning of the second subdivision of the one hundred and ninety-third section of the Practice Act; *held,* further, that such verdict was vicious, and should be set aside if the facts were proved by competent testimony.

CONSTRUCTION OF STATUTE.—A statute, in derogation of the common law, must be strictly construed.

LIABILITY OF DITCH OWNERS FOR DAMAGES.—When, by means of an artificial ditch, the waters of a stream are conducted from the bed of the stream over the adjacent country, crossing other small natural watercourses, the beds of which are dammed up by the embankment of the ditch, and by the fall of rain the waters of the streams become so swollen as to render it necessary to cut the embankment of the ditch to preserve it from injury, and the owners of the ditch cut the embankment at a point where there is no natural watercourse, so that the waters are turned on to cultivated land, causing injury thereto, the injury thereby sustained is not the act of God, but results from negligence, and the owners of the ditch are liable therefor.

DESTRUCTION OF PROPERTY.—A. may not, in order·to save his own property, destroy the property of B., however urgent the necessity.

EXCEPTION TO EVIDENCE.—If an objection is taken to evidence by counsel, and the objection is overruled by the Court, and no exception is taken to the ruling, the presumption is that the counsel acquiesced in the ruling.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

The facts are stated in the opinion of the Court.

*H. P. Barber,* for Appellant.

*H. H. Hartley,* for Respondents.

By the Court, SANDERSON, C. J.

This action was brought to recover damages from the defendant, a ditch corporation, for the negligent, careless and wanton discharge of the waters accumulated in defendant's ditch in and upon the lands of the plaintiffs, whereby the same were injured to the amount of ten thousand dollars, as alleged in the complaint. The jury rendered a verdict in favor of the plaintiffs for the sum of six thousand one hundred and thirty-seven dollars and fifty-cents. Thereupon the defendant moved for a new trial upon the following grounds:

Turner *et al.* v. Tuolumne County Water Company.

First—Misconduct and irregularity in the proceedings of the jury in determining their verdict by chance.

Second—Insufficiency of the evidence to justify the verdict, and that it is against law.

Third—Error in law occurring at the trial and excepted to by defendant.

The motion for a new trial was denied, and the defendant appeals.

1. As to the first ground, both parties rely solely upon the affidavits made by most, if not all, of the jurors by whom the verdict was rendered, no other evidence being offered by either. As to the facts established by these affidavits the parties disagree. Under the view which we have taken of the question presented, it becomes unnecessary for us to determine this dispute, and we shall assume that the facts presented by the affidavits are as claimed by the appellant. For the purposes of our decision, we therefore assume that the verdict, so far as the amount of the damages was concerned, was rendered in pursuance of an agreement between the jurors to the effect that each should put down upon a separate piece of paper the amount which he thought the plaintiffs were justly entitled to recover; that the several sums thus marked should be added together and the total amount divided by twelve, and that the quotient, whatever it might be, should be their verdict, without further consultation or discussion.

Where damages are to be assessed by a jury, it not unfrequently, if not always, happens that there is a great diversity of opinion as to the amount which ought to be given. Where such is the case the verdict must necessarily be the result of mutual concession, and the jury are bound to seek for a medium sum upon which their conflicting views may harmonize. It will frequently happen that this medium sum will be the average, or approximately so, of the different sums advocated by each. To ascertain this average, the jury may properly adopt the method which was used in the present case, but they ought not to agree to be bound by the result, whatever it may be. If they do so agree, and such result is made the verdict with-

out further consultation or assent, such verdict is vicious and irregular, and must be set aside whenever the fact is made to appear by proper and competent evidence. If, on the contrary, they do not agree to be bound by the result, but reserve to themselves the right to dissent, such a proceeding is not irregular; and if afterwards, upon consultation and discussion, they finally agree to adopt such result as their verdict, the verdict so found is good. (*Dana* v. *Tucker*, 4 John. 487; *Harvey* v. *Rickett*, 15 John. 87; *Smith* v. *Cheetham*, 3 Caines, 57; *Grinnell* v. *Phillips*, 1 Mass. 541; *Warner* v. *Robinson*, 1 Root, 194; *Wilson* v. *Berryman*, 5 Cal. 44; *Roberts* v. *Failis*, 1 Cowen, 338.)

Under the facts of this case, as we have assumed them to be, the verdict is undoubtedly vicious, and ought to be set aside. The only question for us to determine is, whether the affidavits of the jurors can be received for the purpose of establishing those facts. Although there is some conflict of authority upon this question, the better opinion seems to be, that by the common law, the affidavits of jurors cannot be received for the purpose of impeaching their verdict, but may be admitted in support thereof. (*Vaise* v. *Delaval*, 1 Term Rep. 11; *Dana* v. *Tucker*, 4 John. 487; *Sargeant* v. *Deniston*, 5 Cowen, 106; *Ex parte Cayhendall*, 6 Cowen, 53; *The People* v. *Columbia Common Pleas*, 1 Wend. 297.) But this rule of the common law has been changed, in this State, to a certain extent, by statute. The second subdivision of the one hundred and ninety-third section of the Practice Act provides that the misconduct of the jury shall be cause for new trial, "and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict, or to a finding on any question or questions submitted to them by the Court, by a resort to the determination of chance, such misconduct may be proved by the affidavits of any one or more of the jurors." Being in derogation of the common law, this statute must be strictly construed, and cannot be held to include such kinds of misconduct as do not come clearly within the descriptive terms of the Act. Why the Legislature should sanction different modes of prov-

Turner *et al. v.* Tuolumne County Water Company.

ing different kinds of misconduct is not readily perceived. If the affidavits of the jurors are to be received for the purpose of establishing certain kinds of misconduct, there seems to be no good reason why they should not be received as to all kinds without distinction. But that the Legislature has made such a distinction is manifest, and we are bound to take the law as we find it, regardless of its incongruities. As the law now stands, there are certain irregularities fatal to a verdict which may be proved by the affidavits of the jurors, and certain other irregularities equally fatal which can only be proved in the manner authorized by the rules of the common law; and it only remains to determine whether that which is alleged in the present case belongs to the former or latter class. If the method adopted by the jury for the purpose of arriving at a verdict may be properly characterized as "a resort to the determination of chance," the affidavits in question are admissible; otherwise, not.

We have not been able to find a case in which such a verdict has been held to be a chance verdict, but we have found several where the contrary has been maintained. In *Cowperthwaite* v. *Jones*, 2 Dallas, 55, the jury adopted the same method of ascertaining the amount of damages which was resorted to in this case, and the Court said : " The first objection as to the manner of the jury collecting the sense of its members, with regard to the *quantum* of damages, does not appear to us to be well founded or at all similar to the case of casting lots for their verdict." This case was afterwards affirmed in the Supreme Court of Pennsylvania. In *Thompson's Case*, 8 Grattan, 637, the Supreme Court of Virginia, in commenting upon this method of ascertaing the amount of damages to be inserted in a verdict, said : " What more, we would ask, have the jury done in this case than what we know is of every day occurrence in trials of Courts of equity, where, when a question of damage, or value or compensation arises before the Master, and when witnesses of equal credibility or integrity and intelligence differ in their estimates, the Master adopts as his assessment an average of the estimates of such witnesses ; and

51

this practice is sanctioned by a Court of equity, which is a Court of conscience as it is of law and justice. Indeed, in some cases, it may be considered a rule of necessity as well as conscience." In *Smith* v. *Cheetham*, 3 Caines, 61, Mr. Chief Justice Kent said: "If the jury cast lots for whom they shall find, it would, no doubt, vitiate the verdict. * * * The charge here is not that the jury cast lots whether they should find for the plaintiff or defendant, but only that in ascertaining the amount of the damages they took the average sum deduced from the different opinions of each other. This has no analogy to the case of casting lots or determining by chance for whom they shall find." In *Wilson* v. *Berryman*, 5 Cal. 46, Mr. Chief Justice Murray said: " Such verdicts are regarded in the same light by the Courts as gambling verdicts, and will be invariably set aside, just as if the jury had thrown dice or resorted to any species of gambling to determine the amount." Thus he admits that such a verdict is not a chance verdict, while he holds it to be equally vicious.

But independent of authority, it is manifest that there is no element of chance in such a verdict. Each juror marks a sum which, in his judgment, represents the true amount of damages. Neither of these sums is the result of chance; on the contrary, each is the result of the judgment or will of the juror by whom it was marked. Neither is the aggregate of these sums, nor the quotient resulting from a division of the aggregate by twelve, the result of chance, but, on the contrary, the result of the most accurate of the sciences. Thus from the commencement to the end of the process no quantity which enters into the final result is determined by a resort to chance.

We are therefore of the opinion that the verdict in this case is not a chance verdict, within the meaning of the second sub-division of the one hundred and ninety-third section of the Practice Act, and that for that reason the affidavits of the jurors by whom it was rendered cannot be admitted to impeach it. There being no other evidence, it follows that the

verdict, so far as the point under consideration is concerned, must be allowed to stand.

2. It is next claimed by appellant that the verdict is contrary to the evidence, and ought to be set aside upon that ground.

The cause of action specified in the complaint is the negligent, careless, and wanton discharge of the waters of defendant's ditch upon the lands of the plaintiffs by the act of the defendant. This was done during the great flood of eighteen hundred and sixty-two, and it is claimed by the appellant that the damages sustained by the plaintiffs were occasioned by the act of God. The extraordinary storms of that year, it is true, were the acts of God; but the evidence shows that those storms would not have caused the damage in question but for the agency of the defendant. But for defendant's ditch and their management of it, the plaintiffs' farm would have remained uninjured. As appears from the evidence, the storm was not sudden, but gradual, affording the agents of the defendant ample time to take such steps for the protection of the ditch against its effects as their judgment dictated. To that end they adopted such measures as they saw proper, and it is of those measures that the negligence, carelessness and wantonness which are the foundation of the action are predicated. The evidence shows that had other measures been taken the defendant's ditch would have been equally protected and no damage would have been done to the plaintiffs' farm. While the defendant had an undoubted right to ward off from its own property the damaging effects of the storm, yet in exercising that right it was bound to take care not to injure that of the plaintiffs. The defendant had no right to adopt measures for the protection of its own property which would lead to the destruction of the plaintiffs. A., for the purpose of saving his own life, may, if it be necessary, take the life of B. Thus, if A. and B. are wrecked at sea and both cling to the same spar, as the only means of saving life, and the spar is insufficient to sustain both, A. may wrest the spar from the grasp of B. although the death of B. may be the immediate

consequence.   This is allowed by the law of self-preservation. But this rule does not extend to property, and A. may not, in order to save his own property, destroy the property of B. however urgent the necessity.   The evidence shows that the defendant's ditch passed along the side-hill, crossing and damming up ravines and gulches which in times of freshet constituted natural watercourses into which defendant could have turned the water without any injurious result to the plaintiffs' farm ; yet this was not done, but on the contrary the water which was so destructive to the plaintiffs' farm was turned out of the ditch at a point where there was no ravine or gulch. The agents of the defendant seem to have acted solely for the safety of the ditch, regardless of consequences, so far as the property of others was concerned.   Whether in so doing they were guilty of negligence was a question for the jury to determine from the evidence under the instructions of the Court. That the evidence tends to prove negligence cannot be denied, and that the jury was correctly instructed by the Court as to the law of the case we are bound to presume, for the record does not contain the instructions.   It results that, in our judgment, the evidence sustains the verdict.

3. The only error of law assigned which we have not already considered is as to the admission of certain evidence as to the construction of the ditch.   This evidence was objected to by counsel for the appellant, and the objection was overruled by the Court, but it nowhere appears in the record that counsel took an exception to the ruling of the Court. Such being the case, he is presumed to have acquiesced therein.

Judgment affirmed.