## L. H. GOODMAN *vs.* JESSE CODY.

A verdict arrived at by a resort to the determination of chance or lot, is contrary to the Statute.

Resorting to arithmetical average of the views of a jury by each juror writing the amount of the verdict, and dividing the aggregate amount by the number of jurors, and taking the quotient as the mediate views of the jury, is not an act of misconduct on the part of the jury, but a final verdict reached by such a process is a verdict arrived at by chance, and is such an act of misconduct on the part of the jury as should cause their verdict to be set aside.

The word "chance," as used in the Statute, is not one of technical meaning and was employed in a popular sense. As popularly understood, anything happens by chance to one, which was neither understandingly brought about by his act, nor pre-estimated by his understanding.

Error to First Judicial District.

*J. E. Wyche* and *James M. Lasater* for plaintiff in error.

*Elisha P. Ferry* for defendant in error.

Opinion by GREENE, Associate Justice.

The main question in this case is a decisive one. It is, whether the verdict of the jury in the Court below is a verdict arrived at by a resort to the determination of chance or lot, contrary to the statute. The statute, to which it is supposed to be contrary, provides that a verdict may be vacated and a new trial granted for "misconduct of the jury," and that "whenever one or more of the jurors shall have been induced to assent to any general or special verdict, to a finding on a question or questions submitted to the jury by the Court, other and different from his own conclusions, and arrived at by a resort to the determination of chance or lot, such misconduct may be proved by the affidavits of one or more of the jurors."

42

In the cause at bar the jury found, or pretended to find, a verdict for defendant in error, (plaintiff below) of $675.00. By the affidavits of jurors, and by no other sufficient evidence, it appears that some of the jury were induced to assent to a verdict other and different from their own conclusions, and arrived at by a resort to the following mode of determination: By agreement among the jurors, they were severally to mark on paper such amounts as they respectively saw fit, and the quotient of the sum of these amounts, divided by the number of jurors, was to be their verdict. Such an operation they went through twice. The first quotient was so repugnant to the convictions of some, because too large, that they refused to be bound by it. The second quotient, although much larger, was returned by the jury into Court, and is the verdict before us.

It is well settled law, that a verdict determined in this manner is a bad verdict. If the jury conclude its deliberations by such an operation, if the last step in getting at a verdict be the terminal step in such an operation, both in reason and authority the verdict is bad. 4 Johns, 487; 1 Cowen, 238; 5 Cal., 45.

But if the operation be merely mediate and not determinate, if it be resorted to merely to acquaint individual jurors with the average sense of the jury on the question of damages, which damages are subsequently to be determined by agreement, then there is neither reason nor authority for holding the verdict avoided by the operation. 5 Cal., 45; 1 Graham and Waterman on New Trials, 102, 108, and cases cited; 2 *Id.*, 878, 380 and cases cited.

The number of times the operation is indulged in is immaterial, except perhaps as an index to the purpose which has induced it. How many times soever it be performed, if the last time it be not determinate, the verdict is not bad by reason of it; but if the last time it be determinate, is thoroughly bad.

In this case, a second operation seems to have determined the verdict. It resulted in a sum which was returned into the Court below, and there received, as the true finding of the jurors, one and all; while from the affidavits it sufficiently appears that it was so returned not because a true joint and several find-

ing but because it was the result of the second operation of making, addition and division.

Affidavits of jurors cannot be received under our law to impugn the verdict, unless that verdict be arrived at by a resort to the determination of chance or lot; and to exclude such affidavits in this case, the defendant in error very forcibly argues, and his argument is supported by a very able opinion of the judge of the Court below, and by eminent foreign authority, (25 Cal., 400; *Id.*, 460; 29 Cal., 257; 8 Grattan, 637; 3 Caines, 61,) on which that opinion is based, that a determination by an operation of the kind specified is not a determination by chance or lot. The majority of this Court, however, have arrived at a different opinion. We hold it a determination by chance.

The statute, allowing proof by affidavits of jurors, is truly in derogation of the common law, but it is at the same time a remedial statute. It is designed to relieve suitors from a very sore evil of illegal verdicts; the illegality of which can seldom be proved unless by affidavits of the very men who have conspired to render them. The statute is to be liberally construed to effect the intent of legislation. The degree of liberality of construction is to be measured by the reason for it. According to the bulk and ramifications of the mischief to be cured, the words of the statute are to be expanded until, if necessary, their utmost stretch and distribution of meaning and application is reached.

It seems too plain for argument, that a verdict got in the manner indicated has faults, the same in kind as those which attend and vitiate an unquestionably chance verdict, *e. g.*, a verdict got by the throw of dice. In the instance of the dice-throw, the verdict is bad because it is not the result of the law and the intelligence and judgment of each juror applied to the evidence in the case, because it is the result of a blind venture by each juror of rights of a controversy entrusted for decision to himself, to determination by a mode the issue of which his intelligence does not foresee, nor his judgment have to approve. The same defects exactly occur in a verdict got by average of sums furnished by individual jurors. In neither case is the

verdict made valid by the oath of the jury, since in both cases it is got in a manner incompatible with submission to their oath.

But the verdict by arithmetic average not only has the identical faults of one by dicethrow, but it has a superadded viciousness of its own, which would lead us to presume that the Legislature, when they saw the necessity of lifting the shield that protected the one kind, could not have failed to see, could not have left still covered, the more egregious iniquity of the other. We ought to look for and expect to find in the law exposing for redress the method fraught with lesser evil, words efficient to expose for the same purpose the kindred method fraught with greater.

When a jury agrees to get a verdict by average, the low-figure jurors, no matter how largely in majority, are at the mercy of the high-figure jurors. A single juror, perhaps the individual lowest in intelligence, of poorest judgment, the one least capable of influencing his fellows, and quite possibly also the very juror disposed to be most compliant, may, by setting down an exorbitant number, draw all the rest up toward a sum he himself would like to have given. The agreement is a fraud by all the jurors on the parties. But not only so, it is liable to unwatched and incorrigible abuse. It opens a field for further fraud, on jurors by jurors, fraud within fraud. Nor is this all. The juror entering into the agreement finds himself instantly torn by distracting motives to action, his undertaking with his co-jurors impels him in one direction, the obligation of his oath drags him in another; his undertaking requires him to set down as his number the damages he really thinks the plaintiff ought to recover, the obligation of his oath (if he has not lost all sense of it) demands that he set down that number which in his judgment will conduce most effectually to an average that his conscience can approve; and obviously, unless the average sense of the jury and his own independent conclusion, in his judgment, coincide, the numbers in the one instance and in the other will differ.

A verdict determined by average is not a legal and true

verdict; it has no true ring; it has not the stamp of the jury's oath upon it; it is a composite fraud washed with a golden name, Yet, strange to say, counsel are found to argue, and authorities to support this method of average, and they defend it as being analagous to the action of a master in Chancery. in averaging testimony on values. Now, a master in Chancery, so far forth as he is a judge of fact, may be said to correspond in function with a jury, and it may be plausibly argued, that as he averages estimates of different witnesses, so may a jury. But here expire the duty of the judge of fact, and the analogy, together. The judge of fact, in averaging testimony, does so conformably to reason and good conscience. The jurors, in averaging a verdict, average whatever sums are set down, however unconscionable. The judge of fact averages the estimates of witnesses, but jurors are not witnesses; and it is just as practically wrong for jurors to average their numerous fixed, and even conscientious, estimates, as it is practically impossible for a master to average his unit of an estimate. The duty of a jury is not unqualifiedly to agree, but to agree if they can without violating their consciences. If they cannot agree without a violation of conscience by one or more of them, then they can render no joint verdict good in law. The parties are entitled to a verdict, to which the consciences of all the jurors have been brought to yield assent, and they have a right that nothing else styled verdict shall be foisted upon them. Parties have a right, that the intelligence, capacity and judgment of each juror shall avail in the production of the verdict, not as one unit against eleven other equivalent units, but for what they are worth as compared with the total intelligence, capacity and judgment on the jury. It is wrong for a juror, going to the jury room, to take it for granted that he is an average of the jurors, that all are his equals in discernment, memory, comprehension and strength of conviction, and that consequently an average of his and their opinions will be a fair and just verdict; it is his duty to draw all opinions to his own, if by just reasoning upon the evidence, and becoming assertion of his own convictions, he can, and when he cannot draw them further, it is his duty to yield to the views of his fellows, as far as necessity may require and conscience per-

mit, and thus, by alternate insistence and deference do his best to bring about an agreement; and, if he cannot conscientiously reach an agreement with his fellows, it is his duty, a duty owed by him to the parties, and sanctioned by his oath, to hang the jury.

The foregoing considerations show that a verdict found in the manner pursued to arrive at the one at bar, has the same defects as a verdict confessedly determined by chance; that the finding got by average is bad, and subject to even more objections than one determined by throw of dice; that the statute to relieve against verdicts determined by chance is remedial, and ought to be liberally construed to relieve against all verdicts that can properly be said to be found and vitiated by a resort to such a determination; and that, if it be possible without violence to language to consider a finding got by average, as in the case before us, to have been arrived at by a resort to the determination of chance, then it is the duty of this court in this case, so to apply the statute as to protect the plaintiff in error against the verdict returned by the jury in the court below. It remains to show, that the finding a verdict by average may, within the true and received meaning of words, be said to be determined by chance.

What is chance? It is said by a learned judge, in a case cited (*Turner, et al., vs. Tuolumne county Water Co.*, 25 Cal., 402), that a verdict found by average cannot be called chance, because derived from sums the result of intelligent action of individual jurors, by means of "the most accurate of the sciences." But for all that exact science had to do with the matter, he who gave that opinion might as well have held that were twelve dice cast, and the sums turned up added together, the aggregate divided by twelve, and the quotent taken for a verdict, such a verdict would not be got by determination of chance, because got by "the most accurate of sciences." The learned judge erred doubly: First, he overlooked the fact that the verdict is already determinate and fixed, as soon as the twelve sums are ascertained, and before the exact science is applied, within the maxim, *Id certum est quod certum fiat;*

and, second, he evidently mistook the nature of chance, falsely fancying that what is certain in result or is brought about by known or intelligent agencies, cannot be said to result from chance.

Among all the cases that have been cited in favor and against the verdict in the case at bar, being considered one got by chance determination, we find none in which the meaning of the word chance is discussed, and all the cases are in this respect unsatisfactory.

The word "chance" has not been adopted or defined as a law term, is not technical, and must be deemed used by the legislature in a popular sense. According to generally accepted and ordinary use of the word, anything is said to have happened by chance to anyone, which was neither understandingly brought about by his act, nor pre-estimated by his understanding. If one move his arm inconsiderately, and by the movement unintentionally break a crystal vase, we say he did it by chance; for his intelligence did not from step to step estimate, or direct, the action to its result. Yet, although the result was a chance one, it was the certain, inevitable result of assured relative positions of the arm and the vase, and the muscular action, perhaps voluntary, of the former. Again, when a die is thrown, the position in which the die will fall is a necessary effect from well-known but unestimated causes; by the original position of the die, its size, form and weight, the manipulation given it, the distance and velocity of the throw, the sort of surface it falls upon, and perhaps other things, the final position of the die is determined with mathematical certainty, and may, by any painstaking mathematician possessed of the elements of the problem, by the use of "the most accurate of the sciences," be calculated with infallible precision. Still we say, and properly say, that the final position of the die is determined by chance; and by this we mean, not that the result of the throw was uncertain, or a consequence of unknown causes, but that it was produced by causes, the efficient and proportionate operation of which was, in fact, by the person to whom it chanced neither estimated nor intelligently controlled for the accom-

plishment of the result.    With the same propriety, we speak of meeting by chance a person at a certain place at a certain time; and this, no matter how exactly we may have precalculated and intended being ourselves at that place at the particular time, nor how exactly that person may have pre-calculated and intended being himself at the same place at the same time likewise, provided we, to whom the chance happens, did not precalculate nor consciously bring about the meeting then and there.

From the popular use of the word "chance," as illustrated in these examples, it seems plain to us that a juror resorts to the determination of chance for a verdict whenever he resorts to any method of determination, the steps and result of which are beyond his calculation, and unfollowed and unparticipated in by his understanding, and all the jurors resort to such a method, when they resort to the method of average.    With a verdict got, fairly as between the jurors, by such a method, the conclusion attained by the intelligence of any one juror never coincides, unless the average of the conclusions of all the jurors happens to be identical with his own; whereas, in a good verdict, every element of chance is eliminated by the fact, that before the verdict is complete, every intelligence on the jury, being first well apprised of the action of every other, has, by its own individual, conscious action, ratified and arrived at the same conclusion with every other.    In a verdict got by the method of average, every sum that goes to develop the verdict is a chance sum as to each juror, save the sum that the juror himself sets down; and the verdict is not redeemed from being a chance verdict as to each juror, and therefore chance as to all, by the fact that each has contributed to it an element not of chance, any more than a dice-throw would be redeemed from being chance, by the fact that the throw was in part controlled by certain intentional motion of the dice-box.

The verdict in the Court below must be set aside, because arrived at by a resort to the determination of chance.

We notice nothing else erroneous in the record, unless it be that the charge of the judge should have distinguished between the degree of negligence which would render a surgeon liable

when operating gratuitously and that which would render him liable when operating for reward.    But as to whether such distinction was necessary in the case we express no opinion.

Let the judgment of the Court below be reversed, and a new trial be had.

Judgment reversed.