(February 3, 1893.)

## FLOOD v. McCLURE.

[32 Pac. 254.]

CHANCE VERDICT.—Where a jury agree that each member thereof shall mark the sum which he thinks the plaintiff is entitled to recover on a slip of paper, and then ascertain by addition the amount of the sums so marked, and to then divide said amount by twelve, the number of jurors, and that the quotient resulting from such division shall be the amount of the verdict, such verdict is obtained by "resort to a determination of chance" within the meaning of that term, as used in subdivision 2, section 4439 of the Revised Statutes of 1887.

SAME—COMPETENT PROOF OF.—The affidavit of a juror is competent proof to show that the verdict was so obtained.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

R. E. McFarland and Albert Hagan, for Appellant.

The jury did not arrive at their verdict in any other manner than as agreed on between themselves, and resorting to the determination of chance, in this, that the jury would write down certain amounts of damages to be recovered herein, and that said separate amounts should be added together and divided by twelve, and that one of the jurors, in placing his number, placed it at the sum of $500, which is in excess of any amount that the plaintiff could have recovered herein, and in

excess of any amount sued for herein exclusive of rent. The
means of procuring the result were unauthorized. (*Pawnee
Ditch Co. v. Adams,* 1 Colo. App. 250, 28 Pac. 662.) It sub-
stitutes the fluctuating and uncertain hazards of the lottery for
the deliberate conclusions of their reflections and interchange
of views, and cites the following cases: *Parham v. Harney,*
6 Smedes & M. 55; *Lee v. Clute,* 10 Nev. 149; *Kennedy v. Ken-
nedy,* 18 N. J. L. 450; *City of Pekin v. Winkle,* 77 Ill. 56;
*Dorr v. Fenno,* 12 Pick. 520. The rule is, that if the jury
resorted to this means in order to obtain a proper verdict and
were not bound thereby, and after such means adopted the same
as a verdict it would be good, but if they agreed to be bound, or
were bound, by the sum ascertained by such means and made
their verdict by such contingent result, without reserving the
right to dissent, then the verdict is not good and will be set
aside. (*Wilson v. Berryman,* 5 Cal. 46; *Turner v. Water Co.,*
25 Cal. 399; *Boyce v. Stage Co.,* 25 Cal. 473; *Donner v. Pal-
mer,* 23 Cal. 47; *Levy v. Breeman,* 39 Cal. 489; *Gimmell v.
Phillips,* 1 Mass. 541; *Dana v. Tucker,* 4 Johns. 487; *Honey
v. Ricketts,* 15 Johns. 87; *Toberts v. Foiles,* 1 Cow. 238.)

Charles L. Heitman, for Respondent.

Section 4439, subsection 2, of the Revised Statutes of Idaho
reads as follows: "Misconduct of Jurors.—And when any one
or more of the jurors has been induced to assent to any general
or special verdict, or that find in any case submitted to them
by the court by a resort to a determination of chance, such
misconduct may be proven by any one of the jurors." This stat-
ute is an exact copy of the California statute (3 Deering's Cal.
Code Civ. Proc., sec. 657, subsec. 2), and was adopted by this
state from the California statute, and is therefore governed by
the construction placed upon that statute by the California
court. (*Bradbury v. Davis,* 5 Colo. 265; 3 Morr. Min. Rep.
398.) Such a verdict, while it is vicious and irregular, is
not a chance verdict within the meaning of the statute. (*Tur-
ner v. Tuolumne Co. W. Co.,* 25 Cal. 401.) Such verdict is
vicious and irregular, and must be set aside whenever the fact
is made to appear by proper and competent evidence, but affi-

·davits of jurors are not proper and competent evidence to ·impeach such verdict, but are inadmissible because there is no element of chance in such a verdict. (*Cowperthwaite v. Jones*, 2 Dall. 55; *Hoare v. Hindley*, 49 Cal. 274.) The true rule, as laid down by the California courts, from which state we adopt ·our statutes, together with the interpretation and construction of the same by the California courts and by the leading courts of the Union, is that a chance verdict can be impeached by the affidavits of the jurors, where a statute law allows it to be done, but that a verdict not obtained by a resort to a ·determination by chance, although reached by methods vicious ·and irregular, must be impeached by evidence other than that furnished by the jurors. (*Turner v. Tuolumne Co. W. Co.*, ·25 Cal. 399; *Boyce v. California Stage Co.*, 25 Cal. 473; *Hoare v. Hindley*, 49 Cal. 274; *Hunt v. Elliott*, 77 Cal. 588, 20 Pac. 132; *People v. Gray*, 61 Cal. 183, 44 Am. Rep. 549.)

SULLIVAN, J.—This action was brought by the respondent ·against the appellant to recover $550 damages, alleged to have been sustained by reason of the appellant, as sheriff of Kootenai county, having levied upon certain property claimed by the respondent, to satisfy an execution issued in the case of Liebe & ·Co. against one Henry Farley.

It is alleged that said property was of the value of $470.08, ·and that by reason of the levy and sale under said execution respondent was damaged in that sum, and in the further sum ·of seventy-five dollars for certain rents. The answer denies the material allegations of the complaint, and avers that the property referred to in the complaint was the property of one ·John Farley, the execution debtor above referred to, and not ·the property of plaintiff, and alleges that the pretended transfer from Farley to Flood was fraudulent and made with intent to ·hinder, delay and defraud Farley's creditors.

The action was tried by the court with a jury, and judgment rendered against appellant for the sum of $500. During ·the trial the court withdrew the seventy-five dollars claimed ·for rent from the consideration of the jury. This appeal is ·from the order overruling the motion for a new trial and from ·the judgment.

The assignment of errors contains eighteen specifications. The first is the misconduct of the jury in arriving at their verdict by resorting to a determination thereto by chance. It is shown by the affidavits of Ernest Rhienhardt, J. G. Hawkins and O. J. Johns, three of the jurors who tried said cause, that the jury arrived at their verdict by agreeing that each juror should mark on a slip of paper the amount which he considered the plaintiff entitled to recover, and thereafter the several sums so marked should be added together and the amount thereof divided by twelve, the number of jurors, and that the quotient arising from such division should be the verdict, and that said verdict was arrived at in that way and in no other. It is also shown by the affidavit of Rhienhardt that at least one of the jurors, in writing upon the slip of paper the sum which he thought plaintiff was entitled to recover, wrote thereon the sum of $500, which sum was added with the other sums written by the remaining jurors, and that the aggregate sum was divided by twelve, which resulted in making the sum mentioned in the verdict. The proof of the method used to determine the amount of the verdict was not disputed.

Verdicts obtained in this manner have been condemned by many courts, and if the method used in arriving at the verdict comes within the prohibition of subdivision 2 of section 4439 of the Revised Statutes of 1887, the verdict should have been set aside and a new trial granted. Said subdivision 2 provides as follows: "Misconduct of the Jury.—And when any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any of the jurors."

Counsel for the respondent admits that a verdict so obtained is vicious and irregular, but contends that it is not a verdict obtained by a resort to the determination of chance within the meaning of that term as used in the statute, and cites, *Turner v. Tuolumne Co. W. Co.,* 25 Cal. 397, as an authority in his favor. In that case the jury arrived at their verdict in the same manner as in the case at bar, and the

court said: "Under the facts of this case as we have assumed them to be, the verdict is undoubtedly vicious and ought to be set aside. The only question for us to decide is, whether the affidavits of the jurors can be received for the purpose of establishing those facts. Although there is some conflict of authority upon this question, the better opinion seems to be that by the common law, the affidavits of jurors cannot be received for the purpose of impeaching their verdict, but may be admitted in support of it. But this rule of the common law has been changed in this state to a certain extent by the statute."

The learned court then quotes the second subdivision of section 193 of the California Practice Act, which is the same as subdivision 2 of section 4439 of the Revised Statutes of Idaho above quoted, and the court further says: "Being in derogation of the common law, this statute must be strictly construed and cannot be held to include such kinds of misconduct as do not come clearly within the descriptive terms of the act." The court, after referring to a number of authorities on the point, whether a verdict obtained in the manner set forth was "a resort to the determination of chance" within the meaning of that expression as used in said section, arrives at the following conclusion: "We are therefore of the opinion that the verdict in this case is not a chance verdict within the meaning of the second subdivision of section 193 of the Practice Act, and for that reason the affidavits of the jurors by whom it was rendered cannot be admitted to impeach it."

In Thompson and Merriam on Juries, section 415, the eminent authors, after quoting from that part of the opinion of the court in *Turner v. Tuolumne Co. W. Co., supra,* which holds that there was no element of chance in the method used by the jury in arriving at the verdict rendered, but that the result was obtained by the most accurate of sciences, say: "This reasoning seems hardly conclusive. It proceeds upon the hypothesis that at the time the jurors consent to be bound by the result of the addition and division it is certain what each juror will mark down as his estimate of the damages; hence this method of finding a verdict is as exact as the science of mathematics. But the contrary is the fact. The jurors con-

sent that their verdict shall vary from abstract justice in that degree that each juror deviates from sound judgment. All the prejudices, whims and caprices which sway a juror in his deliberations are given full play, and they measurably affect the final result. Nothing could well be more the sport of chance than a conclusion reached in this manner." In the case at bar, it is shown that prejudice, whim and caprice led at least one of the jurors in this case to mark a larger sum than the plaintiff was entitled to recover, in any view of the case.

"Quotient" verdicts are often referred to as "chance" verdicts. (Thompson and Merriam on Juries, 517, note.) This conclusion as reached in *Turner v. Tuolumne County Water Co.,* *supra,* by applying the rule of strict construction, a construction forbidden by section 4 of the Revised Statutes of Idaho, which section is as follows: "The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to these statutes. The Revised Statutes establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed, with a view to effect their objects and to promote justice."

It is contended that as we adopted this statute from the statutes of California, we thereby adopted the construction given said section by the supreme court of that state. It is true that the rule is, when a state adopts a statute of a sister state, that it thereby adopts the interpretation and construction given such statute by the courts of last resort of the state from whence it is adopted. But when the statute is adopted from a state in which the rule obtains that all statutes in derogation of the common law must be strictly construed, and the rule in the state adopting such statute is that, not only all statutes in derogation of the common law, but that all statutes, whether in derogation of the common law or not, must be liberally construed, the rule of liberal construction must prevail.

Counsel for respondent in support of his contention, in addition to *Turner v. Tuolumne County Water Co., supra,* cites:

*Boyce v. California Stage Co.,* 25 Cal. 460; *Hoare v. Hindley,* 49 Cal. 274; *Hunt v. Elliott,* 77 Cal. 588, 20 Pac. 132; *People v. Gray,* 61 Cal. 183, 44 Am. Rep. 549. These decisions are most unsatisfactory, and especially so when tested by the rule of statutory construction that obtains in this state. In *Turner v. Tuolumne County Water Co., supra,* it is held that there is no element of chance in finding a verdict on the method therein set forth, but that it was the result of "the most accurate of sciences," and that the statute authorizing the affidavits of jurors to be received as proof in certain cases is in derogation of the common-law and must be strictly construed. In *Hoare v. Hindley,* 49 Cal. 274, a case in which the jury found a verdict by the same method as used in the case at bar, the court said: "The district court properly disregarded that affidavit, because it could not be assumed, in the absence of any proof to the contrary, that the defendant was present in the jury-room, or had any personal knowledge of what took place there, while the jurymen were considering their verdict," thus impliedly holding that if the facts had been set forth, showing by what means the affiant obtained the information set forth in the affidavit, the court would have considered the matter.

In *Hunt v. Elliott,* 77 Cal. 588, 20 Pac. 132, it was held: 1. That the affidavit of a juror did not state facts which made the verdict, within the meaning of subdivision 2, section 657, of the Code of Civil Procedure, and was therefore inadmissible to impeach it. 2. That affidavit was met and overcome by counter-affidavits, and cites *Turner v. Tuolumne County Water Co., supra,* and affirms the rule of strict construction, and holds that verdict found by the method therein set forth is not the result of a resort to the determination of chance, but that the result is reached by "the most accurate of sciences," which rule and conclusion this court declines to follow or adopt. The great weight of authority condemns verdicts arrived at by the method used in the case at bar, because they are the result of chance and of lottery, rather than the deliberation of the jurors. As stated in one case: "It substitutes the fluctuating and uncertain hazards of the lottery for the deliberate conclusions of their reflections and interchange of views." (*Par-*

*ham v. Harney,* 6 Smedes & M. 55; *Lee v. Clute,* 10 Nev. 149; *Kennedy v. Kennedy,* 18 N. J. L. 450; *City of Pekin v. Winkel,* 77 Ill. 56; *Dorr v. Fenno,* 12 Pick. 520.) In *Lee v. Clute,* 10 Nev. 149, the court said: "The cases where verdicts have been set aside proceed upon the theory that, if upheld, where jurors bind themselves in advance, it might lead to great injustice, because it would enable one inveterate juror, by marking down a very large or small sum, to produce an average and procure a verdict for an amount which would be unreasonable, and at utter variance with the judgment of other jurors. This would be a chance verdict, and whenever such misconduct is properly shown, the verdict ought to be set aside. In every case the verdict ought to be the result of reason, reflection and conscientious conviction."

In *Parham v. Harney, supra,* the amounts named by jurors varied from thirty dollars to $10,000. In the case at bar, one juror at least marked $500, which was a larger sum than plaintiff was entitled to recover under the instructions of the court. *Pawnee Ditch & Imp. Co. v. Adams,* 1 Colo. App. 250, 28 Pac. 662, a case directly in point, and decided under a statute identical with our own, holds that a verdict obtained by the method used in finding the verdict in the case at bar must be set aside, and that such verdict is the result of chance rather than the deliberation of the jurors. In the case at bar the misconduct of the jury was proved by the affidavits of three of the jurors, and said affidavits show that an understanding was had by which each juror was to mark on a slip of paper the amount which he considered the plaintiff entitled to recover, that said sums were to be added together and divided by twelve and the quotient resulting from such division was to be accepted and rendered as the verdict.

These affidavits were not contradicted, and we think that a verdict so found should be set aside. It was not only found by a method both vicious and irregular, but it was a resort to a determination of the same by chance—a method fully as uncertain, and as much the sport of chance, as drawing lots or tossing up a piece of money, to determine the amount of a verdict. The clear intent of the law is that the verdict shall

be the result of intellectual discussion, deliberation and conviction by and of the jury, and we think the method used comes clearly within the provision of subdivision 2, section 4439 of the Revised Statutes, and that the affidavit of a juror is competent to prove the same. If the rights of litigants are to be determined by juries by such methods, they had as well determine their own rights by drawing lots or tossing up a piece of money, and not pretend to submit their cases to juries for their careful deliberation and for the result of their best judgment. This disposes of the first two errors specified.

The third specification is as follows: "The court erred in holding that it was not necessary that there should be a change of possession in the sale of personal property as against creditors, if the creditors do not come in until a year after." This specification is quite obscure, but if the court held that in the sale of personal property an immediate delivery and an actual and continued change of possession are not necessary to a valid sale, as against the seller's creditors, and their successors in interest, the ruling was error. (*Harkness v. Smith,* ante, p. 221, 28 Pac. 424. See Rev. Stats., sec. 3021; *Murphy v. Braase,* ante, p. 544, 32 Pac. 208 (decided at present term of this court).

The fifth specification of error is as follows: "Court erred in excluding from the consideration of the jury the following question: Q. Within the last two years didn't you claim other property that Liebe & Co. attached in an action against James Graham as your property?" We fail to comprehend the relevancy of any pertinent answer to this question. It was not error to exclude it. The sixth error specified is not well taken. The witness answered the question propounded. (See Transcript, fols. 77-79.) In regard to the seventh error specified: The court did not err in allowing Farley to testify to value of articles mentioned in the complaint. If he failed to give each article its true value, the appellant could have shown that fact by producing evidence of its true value. There is nothing in the eighth error specified, as the witness answered the interrogatory referred to. (See Transcript, fols. 123, 124.)

As regards the ninth error specified: The court erred in permitting Graham to testify on behalf of respondent to a conversation had between respondent and Farley. The admission of this testimony was clearly error. The same may be said of the tenth error specified. The court erred in permitting Robertson to testify from whom Farley said he got money to pay for goods bought at auction. That was not the best evidence of that fact. The court erred in not permitting Solomon to testify as to what Farley had told him as to the ownership of the property referred to.

The real point in issue is as to the transfer of the property from Farley to Flood, respondent. The appellant contends that such transfer was fraudulent and void, and Flood contends that it was in good faith and valid. Flood testifies that Farley still remained in possession of the property after giving bill of sale to Flood. (See Transcript, fol. 67.) Farley testifies as a witness for Flood. The testimony excluded was proper to show that said witness had made statements in regard to the ownership of said property in conflict with the testimony given by him. The declarations of Farley as to the ownership of said property made to the sheriff at the time of the levy is proper testimony, and should have been received by the court. It was competent evidence to go to the jury. The fact that the license was taken out in Farley's name was a circumstance to go to the jury and the court erred in excluding it. It was error to exclude the testimony of Martin as to conversations had with Flood and Farley in regard to their business relations, as touching the property in issue.

One of the issues made by the pleadings is that said property belonged to said Farley, and not to Flood, and that the sale from Farley to Flood was fraudulent and void, and made to hinder, delay and defraud creditors of said Farley; much of the evidence excluded by the trial court would have a tendency to sustain the allegations of fraud. The acts and declarations of parties to a fraud, though not a party to the action, are admissible in certain cases. (1 Greenleaf on Evidence, sec. 190, note 2, p. 219; *Mallock v. White,* 20 Cal. 598; *Ferbrache v. Martin,* ante, p. 573, 32 Pac. 252 (decided at this term).

The grantee's knowledge of the fraudulent purpose of the grantor may be shown by any circumstance tending to show participation in the fraudulent design of the grantor. (Am. & Eng. Ency. of Law, 778.)   As to evidence of subsequent acts of ownership over property by grantor, see *Butler v. Collins,* 12 Cal. 457.

The first instruction given to the jury, at the request of plaintiff, is not the law, and it was error for the court to give it.   The same is true of the second instruction.   Instruction No. 1 of defendant should have been given without modification, and it was error to give it as modified.   Instructions 2 and 3, requested by defendant, should have been given, and it was error to refuse them.   The motion for a new trial should have been granted.

The judgment of the court below is reversed and remanded and a new trial ordered, with costs of this appeal in favor of appellant.

Huston, C. J., and Morgan, J., concur.